STATE OF NEBRASKA, APPELLEE V. CALVIN L. CRAIG, APPELLANT.

361 N.W.2d 206

Filed January 11, 1985.   No. 84-168.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Calvin L. Craig appeals his conviction and sentence from a bench trial in Lancaster County for first degree sexual assault on a child under 16 years of age, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1979). Craig was sentenced to a term of imprisonment of not less than 1 year nor more than 2 years. We affirm.

The information charging Craig with first degree sexual assault was filed on August 27, 1982. Names of 14 witnesses for the State were endorsed on the information. On September 29, 1982, Craig filed two motions. The first motion sought depositions from the State's witnesses and alleged that prospective testimony of the deponents was "material or relevant" and would be of "assistance" in preparing Craig's case. Craig's second motion was directed to discovery of any statement given by Craig, his prior criminal record, reports (mental or physical examinations and scientific tests or experiments), documents, and photographs. See Neb. Rev. Stat. § 29-1912(1) (Reissue 1979). Without further action by Craig the district court, on January 6, 1983, granted Craig's motions for discovery and depositions. The district court ordered depositions to be taken within 30 days from the hearing. (The record does not reflect that the requested depositions were actually taken.) On March 3 Craig filed a motion to dismiss the proceedings, claiming that the State had failed to bring Craig to trial within 6 months from the date on which the information was filed. On March 29, 1983, the district court found that the time involved in the discovery process initiated by Craig constituted a delay "for good cause" under Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 1979), excluded such time in computing the last day permissible for commencement of Craig's trial, and overruled the motion for dismissal. On April 19 Craig filed a motion for continuance, containing, among other reasons, "The defendant needs additional time to prepare for trial . . . ." Trial commenced on June 6, 1983.

Although the obvious thrust of his contention concerning a right to a speedy trial relates to Nebraska's "6-month rule" (§ 29-1207(1)), Craig does refer to his right to a speedy trial

under the sixth amendment to the U.S. Constitution and *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In *State v. Brown*, 214 Neb. 665, 670-71, 335 N.W.2d 542, 546 (1983), we stated:

> *Barker* recites a "balancing test" which requires courts to approach each case on an ad hoc basis. This "balancing test" involves four factors bearing upon questions of speedy trial, namely, "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* at 530. As further stated in *Barker* at 533: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." According to *Barker*, at 531, prejudice may result from prolonged incarceration or from an inability to prepare for trial.

Applying the "balancing test" of *Barker* to the present case, Craig has not been denied his constitutionally protected right to a speedy trial. Craig was brought to trial a little over 9 months after the information was filed. A substantial part of that time was used for Craig's pretrial motions and his pursuit of discovery. Therefore, any delay was neither inordinate nor unreasonable. Craig has not been denied his constitutional right to a speedy trial.

The last day permissible under Nebraska statute for commencement of Craig's trial was February 27, 1983, unless any time between August 27, 1982, and February 27, 1983, is excludable in computing the last day for trial in accordance with the "6-month rule" prescribed by § 29-1207(1).

An accused cannot generally take advantage of a delay in being brought to trial, where he is responsible for the delay either by action or inaction. *State v. Fatica*, 214 Neb. 776, 336 N.W.2d 101 (1983); *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983). Craig's motions for discovery and depositions are pretrial motions, and, as such, "the time from filing until final

disposition" must be excluded in computing the last day permissible for trial. See, § 29-1207(4)(a); *State v. Brown, supra*. Under the circumstances Craig must accept a reasonable delay as a consequence of invoking the discovery process in preparation for trial. *State v. Fatica, supra*. From September 29, 1982, when Craig filed his motions for discovery and depositions, until January 6, 1983, when the district court sustained Craig's motions, there are 100 days. Charging Craig with those 100 days and adding such excluded time to the date of February 27, the last day on which Craig's trial could have been commenced under the "6-month rule" is June 7, 1983. Trial commenced on June 6, and, therefore, Craig was brought to trial within the time prescribed by the "6-month rule," § 29-1207(1). Any delay in trial was attributable to Craig's request for discovery and depositions, and such delay was for "good cause" under § 29-1207(4)(f). Lest it appear that the State waited until virtually the last day before commencing the trial, the last permissible date to start Craig's trial would have been extended beyond June 7 by the time consumed in obtaining the depositions requested by Craig, assuming no impermissible conduct by the State delaying the depositions. See *State v. Fatica, supra*. Because we do not have the date when Craig took the last deposition, the question concerning the "6-month rule" is disposed of on the basis of Craig's pretrial motions. The district court correctly denied Craig's motion for dismissal on the basis of a denial of a speedy trial under Nebraska's "6-month rule."

We are reluctant to recount many of the events relative to the offense charged. However, the nature of the offense and Craig's defense render a detailed description indispensable.

The alleged offense occurred on Christmas morning, 1981. The Craig household included the victim—Craig's adopted 13-year-old daughter; the victim's mother; the victim's 5-year-old sister; and Craig, 31 years of age.

The victim, wearing panties and a knee-length nighty, was seated on a couch in the living room of the family residence. Craig sat down next to the victim and asked whether she wanted a "Christmas goose." There being no response, Craig asked if the victim would like to know what a Christmas goose was.

Present in the living room at this time were the victim's mother and younger sister.

According to the victim, after the unanswered question about the "Christmas goose," Craig began to wrestle with the victim. As he crouched on the couch over the struggling victim, Craig pushed the victim down on the couch, pulled up her nighty, pulled down her panties, fondled the victim's genitalia, inserted two of his fingers into the victim's vagina, and manipulated his inserted fingers. After his digital penetration of the victim for 2 or 3 minutes, Craig removed his fingers. The victim went upstairs to change clothes.

The victim's mother testified that the mother was standing approximately 5 to 6 feet from the couch when Craig started wrestling with the victim. The mother observed Craig push the victim down on the couch, saw Craig lift the victim's nighty as she lay on the couch, and noticed Craig's hand fondling the victim's vulva, including two of Craig's fingers between the victim's labia. At that point the mother felt "very uncomfortable" and left the room. Upon her return a few minutes later the mother observed the victim with tears on her face as the victim picked up her panties from the floor.

In his testimony Craig explained that the pajama-clad victim was in a sour mood Christmas morning and that he attempted to improve the victim's mood by pinching her buttocks. In trying to grab the victim about the waist, and while the victim was pushing him away, Craig unintentionally pulled down the victim's pajama bottoms and panties, thereby exposing the victim's genital area. With the victim in such condition Craig admitted attempting to pinch the victim's buttocks but denied fondling the genitalia of the victim, and further denied that any contact with the victim was sexually motivated. Craig, therefore, characterized the Christmas disrobing incident as unintentional, innocent, and without sexual motive or intent.

Craig was arrested in the summer of 1982, and at his trial in 1983 Craig objected to testimony about other events involving Craig and the victim. The other acts or events fell into three categories.

The first incident occurred in the fall of 1980 when the victim, then 12 years old, was alone with Craig in their

residence. The victim had just taken a bath and returned to her bedroom when Craig entered the bedroom, told the victim to lie down on a towel on her bed, and inserted his finger into the victim's vagina.

The second incident occurred in the fall of 1981 at the Craig residence. Again, the victim and Craig were alone. Craig slipped up behind the victim, placed his hand in the back of her jeans and under her panties, and inserted his fingers into her vagina.

The third aspect of other acts related to a series of "wrestling matches" involving Craig and the victim. The series of wrestling matches commenced sometime in the fall of 1980 and included at least 15 separate incidents in which Craig would commence wrestling with the victim in their home, remove her jeans or nighty and panties, and then fondle the victim's "genital area, vaginal area."

On July 29, 1982, Dr. David Rutz, a physician certified in family practice and called as a witness on behalf on Craig, performed a pelvic examination of the victim and examined her external genitalia. Although Dr. Rutz observed no bruises, contusions, or lacerations regarding the victim's external genitalia and found no evidence of vaginal penetration, Dr. Rutz acknowledged it was possible that Craig inserted two fingers into the victim's vagina without breaking her hymenal ring. Dr. Rutz concluded there was no evidence to indicate that the incidents involving Craig and the victim had not happened, or as expressed by Dr. Rutz, "I cannot say either way."

"Sexual crimes have consistently been classified as those in which evidence of other similar sexual conduct has been recognized as having independent relevancy, and courts generally hold that evidence of other sex offenses by the defendant may be admissible . . . ." *State v. Hitt*, 207 Neb. 746, 749, 301 N.W.2d 96, 99 (1981). See, also, *State v. Plymate*, 216 Neb. 722, 345 N.W.2d 327 (1984); *State v. Baker*, 218 Neb. 207, 352 N.W.2d 894 (1984); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984).

We intuitively conclude (1) incidents such as the subject of prosecution in this case do not frequently happen in Nebraska households, and (2) society still rejects and disbelieves such

incidents as commonplace occurrences. Consequently, separated from the past, the victim's account of the incident in this case would appear unbelievable. If the Christmas incident were examined as an isolated episode unconnected with any background or antecedent events, incredibility engendered by the very improbability of the episode would cause the mind to boggle and recoil in disbelief. "[E]xhibited alone, many real occurrences would appear under the guise of falsehood, and truth itself would be made to lie." *The People v. Jenness*, 5 Mich. 305, 323 (1858). See, also, *People v. DerMartzex*, 390 Mich. 410, 213 N.W.2d 97 (1973); *Burke v. State*, 624 P.2d 1240 (Alaska 1980).

When all antecedent acts and events preceding the Christmas incident are considered collectively, reasonable deduction compels probability of Craig's commission of the crime charged. Although the crime charged in the present case involves a teenager, we believe evidence of repeated incidents may be especially relevant in proving sexual crimes committed against persons otherwise defenseless due to age—either the very young or the elderly. Without proof by other acts of a defendant, sexual offenses against the defenseless, except in cases of the fortuitous presence of an eyewitness, would likely go unpunished. Cf. *United States v. Woods*, 484 F.2d 127 (4th Cir. 1973) (other acts to prove infanticide); cf., also, *State v. Morosin*, 200 Neb. 62, 262 N.W.2d 194 (1978) (other acts to prove child abuse, where injuries were claimed to be accidental or unintentional). The incidents before Christmas 1981 had independent relevance under the circumstances and, therefore, were admissible.

This is not to say that evidence of Craig's prior acts was inadmissible under Rule 404(2) of the Nebraska Evidence Rules. See Neb. Rev. Stat. § 27-404(2) (Reissue 1979).

Rule 404(2) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2) of the Nebraska Evidence Rules, as well as its pattern-counterpart, Rule 404(b) of the Federal Rules of Evidence, is an "inclusionary rule," permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. See, *United States v. Williams*, 577 F.2d 188 (2d Cir. 1978); *United States v. Diggs*, 649 F.2d 731 (9th Cir. 1981); *United States v. Wesevich*, 666 F.2d 984 (5th Cir. 1982); *United States v. Moccia*, 681 F.2d 61 (1st Cir. 1982). See, also, Kuhns, *The Propensity to Misunderstand the Character of Specific Acts Evidence*, 66 Iowa L. Rev. 777 (1981).

Thus, under Rule 404(2) as an inclusionary rule, evidence of other acts may be admissible if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged. However, Rule 404(2) is subject to the overriding protection of Rule 403 of the Nebraska Evidence Rules (exclusion, if probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence). See, *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979); *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981); *State v. Scott*, 211 Neb. 237, 318 N.W.2d 94 (1982); *United States v. Moccia, supra*.

The "purposes" set forth in Rule 404(2) are illustrative only and not intended to be exhaustive or mutually exclusive. For instance, McCormick notes categories of permissible purposes beyond those designated in Rule 404(2) such as proof of passion, malice, or perspective (placing an event in the context of nearby and nearly contemporaneous happenings). See McCormick on Evidence § 190 (E. Cleary 3d ed. 1984).

"Modus operandi" is " 'a characteristic method employed by a defendant in the performance of repeated criminal acts.' " *People v. Sheets*, 251 Cal. App. 2d 759, 764, 59 Cal. Rptr. 777, 781 (1967). "*Modus operandi* means, literally, 'method of working,' and refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." *People v. Barbour*, 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667, 672 (1982). Although

modus operandi is often useful in showing that an accused is the perpetrator of a particular crime, the evidentiary function of modus operandi is not restricted to establishing identity. As expressed in McCormick on Evidence, *supra* at 560-61:

> The permissible purposes [of other acts] include: . . . (3) To prove other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.

Consequently, if there is a distinctive pattern or procedure utilized in separate crimes, the separate act or acts may have probative value in determining the guilt of the defendant. See, *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983); *State v. Dandridge*, 209 Neb. 885, 312 N.W.2d 286 (1981).

Craig admitted there were at least 15 separate occasions on which he removed the victim's panties. Each of these occasions commenced with a "wrestling match" in the family residence in the presence of the victim's mother, during which the victim's jeans or nighty and panties were removed and the victim's genitalia fondled. These various "wrestling matches" demonstrated a definite pattern utilized by Craig to disrobe his victim and gain access to her genitalia. Each such event was a link in a specific chain, not isolated occurrences but a history of unusual and distinctive misconduct tending to prove Craig's guilt of the offense charged.

Craig claims that his disrobing the victim on Christmas resulted when the victim attempted to extricate herself from Craig's playful, well-intentioned grasp. Thus, while admitting that he accidentally or unintentionally disrobed the victim on the date of the alleged offense, Craig simultaneously denies the elements of criminal intent and sexual penetration. The antecedent incidents of disrobing the victim tend to negate any plausible theory of statistical probability that Craig's disrobing the victim on Christmas was an accident. Moreover, the several occasions involving Craig's digital penetration of the victim have probative value that such intrusion likewise occurred as a

part of Craig's Christmas contact with the victim. Finally, *intent* is "the state of mind operative at the time of an action." The American Heritage Dictionary of the English Language 682 (1981); *State v. Evans*, 219 Kan. 515, 548 P.2d 772 (1976). The evidence of other acts was relevant in prosecuting Craig, because those incidents showed a pattern of deliberate acts, sexually motivated or intended and culminating in digital penetration of the victim. Consequently, such other acts were not offered to show any propensity or disposition on Craig's part to commit the crime charged. Although the "other acts" were relevant in Craig's bench trial, under the circumstances such other acts would have been admissible in a jury trial as well.

Craig contends that the victim's testimony was not sufficiently corroborated.

The general rule is that testimony of the victim of a sexual assault must be corroborated as to material facts and circumstances which tend to support the victim's testimony and from which, together with the victim's testimony as to the principal fact, an inference of guilt may be drawn. Corroboration of the principal act constituting the offense is not required. *State v. Davis*, 214 Neb. 474, 334 N.W.2d 450 (1983).

Under Neb. Rev. Stat. § 28-318(5) (Reissue 1979), "Sexual penetration shall mean . . . any intrusion, however slight, of any part of the actor's body . . . into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes." If established by evidence beyond a reasonable doubt, any penetration or intrusion of a victim's genital opening, no matter how slight such penetration or intrusion may be, is sufficient to constitute the necessary element of penetration for a conviction of first degree sexual assault. Such element of penetration may be proved either by direct or circumstantial evidence. *State v. Tatum*, 206 Neb. 625, 294 N.W.2d 354 (1980); *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976). "It is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labium is sufficient." *State v. Atkinson*, 190 Neb. 473, 475, 209 N.W.2d 154, 157 (1973).

In the final analysis the testimony of Dr. Rutz regarding his examinations is inconclusive and at best neutral on the issue of Craig's digital penetration of the victim. Direct testimony from the victim and the victim's mother established penetration or intrusion into the vulva and the vagina itself. There was sufficient evidence to sustain a finding that Craig sexually penetrated or intruded into the victim.

The remainder of Craig's contention about corroboration is more appropriately characterized as an attack on the credibility of the victim and her mother. "In a criminal case tried to the court without a jury, the findings of the court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong . . . ." *State v. Kanger*, 215 Neb. 128, 132, 337 N.W.2d 422, 424 (1983). In a bench trial of a criminal case, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given to their testimony. Among the factors entering into the trial court's resolution of any conflicts of evidence are such items as the respective interests of the parties in the litigation; the demeanor of witnesses, including the defendant, while testifying before the court; the apparent fairness exhibited by the witnesses; the extent to which the testimony of the various witnesses is corroborated; and the reasonableness or unreasonableness of statements of the witnesses. Cf. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983) (bench trial in filiation proceedings); cf., also, NJI 1.41. In any bench trial it is the role of the judge, as the trier of fact, to resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of explanations, and weigh the evidence. Cf. *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). It is the province of the Supreme Court, on appeal from a conviction, to refrain from resolving conflicts in the evidence and to sustain the judgment of conviction if, taking the view most favorable to the State, there is sufficient evidence to support the conviction. *State v. Rowe, supra*. There is sufficient evidence to sustain Craig's conviction.

Finally, Craig asserts that the district court abused its discretion in sentencing Craig to imprisonment for a period of not less than 1 nor more than 2 years. The crime committed by Craig is a Class II felony punishable by imprisonment for a

term not less than 1 year nor more than 50 years. Craig contends that he should have been placed on probation rather than incarcerated. In determining an appropriate sentence a court must consider protection for the public and deterrence—to Craig and to those similarly inclined. See *State v. Alexander*, 215 Neb. 478, 339 N.W.2d 297 (1983). The sentence imposed by the district court is within the statutory limits as punishment for the crime of which Craig has been convicted. Under the circumstances there was no abuse of discretion by the district court regarding the sentence imposed on Craig. Therefore, the sentence imposed is affirmed. See, *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983); *State v. Schmidt*, 213 Neb. 126, 327 N.W.2d 624 (1982).

The judgment of the district court is correct in all respects and, therefore, is affirmed.

AFFIRMED.