## STATE OF NEBRASKA, APPELLEE, V. DONALD M. LAFLER, APPELLANT.

405 N.W.2d 576

Filed May 8, 1987.    No. 86-682.

David T. Schroeder, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

A jury in the district court for Cheyenne County found Donald M. Lafler guilty of two crimes, namely, conspiracy, see Neb. Rev. Stat. § 28-202(1) (Reissue 1985), to commit a felony (theft by deception), see Neb. Rev. Stat. § 28-512(1) (Reissue 1985), and attempted theft by deception, see Neb. Rev. Stat. § 28-201(1) (Reissue 1985). We affirm.

After a preliminary hearing on September 10, 1985, in the county court, Lafler was bound over for trial in the district court, and the State filed the information against Lafler on September 16. Lafler, on September 24, filed a plea in abatement, see Neb. Rev. Stat. § 29-1809 (Reissue 1985), alleging that evidence adduced at the preliminary hearing did not show commission of a crime. On October 8, Lafler's attorney appeared before the district court regarding the pending plea in abatement and offered an exhibit consisting of the transcription of testimony and evidence in Lafler's preliminary hearing, which exhibit was received by the court, with the following colloquy between the court and Lafler's attorney:

> MR. SCHROEDER: And with respect to arguing this matter, Your Honor, I would request the Court to continue this matter to a later time for argument and for further arraignment at that time if necessary.
>
> THE COURT: I will read the transcript and then set a date for hearing.
>
> Thank you.
>
> MR. SCHROEDER: Thank you, Your Honor.

The exhibit received on October 8 consisted of 80 pages and 6 exhibits (1-page photostatic copies of documents, for example, a canceled check, a bank draft, and a money order).

On its own motion, the court made the following entry on its

"trial docket" for January 21, 1986: "Arguments to be heard Febr 4 '86 at 10:00." On February 4, a deputy county attorney and Lafler's lawyer appeared before the court, who remarked: "The defendant is present in court with his counsel, Mr. Schroeder; the State is present by the Deputy County Attorney, Mr. Luben. The matter comes on to be heard upon the Plea in Abatement filed on behalf of defendant." Lafler's lawyer then addressed the multicount information filed against Lafler, referred to the "transcript of the preliminary hearing," and requested that the court abate the proceedings on the separate counts in the information. At the conclusion of the hearing on Lafler's plea, the court remarked: "Thank you, gentlemen. I will let you know in a day or two." The court's trial docket for February 4 reflects: "Arguments had. Case submitted." The journal signed by the court concerning the February 4 hearing recited: "[T]he matter is argued by the parties and submitted to the Court. The Court, being duly advised in the premises, finds that the Court shall take this matter under advisement and will notify the parties hereto of the Court's decision." A copy of the February 4 journal was mailed to attorneys of record. As reflected in the court's "journal entry," on February 11 the court overruled Lafler's plea in abatement.

On April 21 Lafler filed a "Motion for Discharge," claiming that he had been denied his right to a speedy trial, guaranteed by the Nebraska Constitution and the U.S. Constitution, as well as prescribed by Nebraska statute. The court overruled Lafler's motion for discharge on April 22, and Lafler's jury trial commenced on May 22.

During the conference on jury instructions, Lafler objected to the court's proposed instruction regarding a conspiratorial "overt act." Concerning conspiracy, § 28-202 in part provides:

(1) A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:

(a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and

(b) He or another person with whom he conspired

commits an overt act in pursuance of the conspiracy.

Lafler tendered the following instruction regarding an overt act:

Defendant['s] Proposed Instruction No. 2

Definitions

. . . An "overt act" is an act knowingly committed by one of the conspirators, in an effort to effect or accomplish some object or purpose of the conspiracy. The act must be one that tends toward accomplishment of the plan or scheme or must be done in furtherance of some object or purpose of the conspiracy alleged.

The court refused Lafler's tendered instruction on "overt act" and instructed the jury:

Instruction No. 8A

"Overt act" is defined as an act which tends to show the pre-existing conspiracy; an act done in pursuance of the conspiracy, manifesting an intent or design looking toward the accomplishment of the crime; it need not of itself have a tendency to accomplish the object of the conspiracy, and further, it need not be an act which is criminal in nature.

The jury found Lafler guilty of conspiracy and an attempted theft by deception. Lafler filed a motion for new trial and, among other items, asserted:

Notwithstanding a question by the Court to the jury panel as to whether or not any of the panel members were related to law enforcement officers, the Defendant has reason to believe and does believe that [name of juror] failed, neglected and refused to inform the Court and the parties that he was an in-law of the Sheriff of Cheyenne County, Nebraska . . . .

At the hearing on the motion for new trial, the deputy county attorney and Lafler's lawyer stipulated that the juror in question was the son-in-law of the Cheyenne County sheriff. In his argument on this aspect of the motion for new trial, Lafler's counsel told the court: "[I]t was my recollection that one of the questions the Court asked the jury panel was whether or not they were related to any law enforcement officers and [juror in question], who ultimately was on the jury, did not respond to

that question in any way."

To that statement by Lafler's counsel, the county attorney countered:

> [M]y recollection of the voir dire by the Court is that there in fact was no question put to the panel as to whether or not they were related to any of the witnesses. . . . However, it is not my recollection that that question was ever asked by the Court and certainly not being asked, [juror in question] did not have any reason to inform the Court of that fact. Of course, the defendant did have time to voir dire, did voir dire extensively . . . .

Concerning voir dire examination of the jury in reference to any relationship to a law enforcement officer, the trial judge commented:

> The Court has no recollection of that precise question being asked. It is the Court's practice to ask any members of the jury panel whether or not they are related to any of the parties. . . . It is not my practice to specifically ask if they are related to law enforcement officers and it is my recollection that I did not ask that specific question.

Lafler's lawyer requested an opportunity to present a witness to substantiate that the court had asked whether any of the prospective jurors was related to a law enforcement officer, but the court refused to hear testimony on that matter. The court sentenced Lafler to probation and overruled Lafler's motion for new trial.

Lafler contends (1) he was entitled to be discharged from the offenses charged, because, contrary to Nebraska statute, he was not brought to trial within 6 months from the date on which the information was filed; (2) the court erred in refusing Lafler's tendered instruction concerning an overt act and, instead, giving instruction No. 8A; and (3) the court committed reversible error in denying Lafler a hearing on the question about the juror's relationship to the sheriff.

## SPEEDY TRIAL

While Lafler's motion for discharge referred to constitutional safeguards and guarantees for a speedy trial, see, Neb. Const. art. I, § 11, and U.S. Const. amend. VI, the question presented on appeal relates only to Nebraska's

statutory prescription for a speedy trial. Therefore, we do not review any question concerning Lafler's constitutional right to a speedy trial. See, *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985); *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) (four-part balancing test to determine whether delay in trial infringes on a defendant's constitutional right to a speedy trial). See, also, *United States v. Loud Hawk*, 474 U.S. 302, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986).

Nebraska's speedy trial act, Neb. Rev. Stat. §§ 29-1207 to 29-1209 (Reissue 1985), was enacted in view of the rule in some federal courts before adoption of the federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 et seq. (1982), and was intended to require discharge of a defendant whose case had not been tried within 6 months after the criminal charge had been filed, unless delay in trial were requested by the defendant. See, Introducer's Statement of Purpose, L.B. 436, Committee on Judiciary, 82d Leg., 1st Sess. (Feb. 15, 1971); Committee Statement, L.B. 436, *supra* (Feb. 18, 1971). Thus, in the case before us, we construe legislation pertaining to a speedy trial, an act which is an implementary companion of the constitutional right to a speedy trial but not coextensive with the constitutional provision for a speedy trial, which is self-executing irrespective of any statutory implementation.

The purpose of Nebraska's speedy trial act, sometimes called the "6-month rule," is protection of an accused from a criminal charge pending for an undue length of time. See *People v. Wilson*, 60 Cal. 2d 139, 383 P.2d 452, 32 Cal. Rptr. 44 (1963).

Under Nebraska's speedy trial act, it is unnecessary to show factually that delay actually prevented commencement of trial, that is, a demonstration of a cause-and-effect relationship between a condemned delay and failure to commence a defendant's trial within 6 months as prescribed by § 29-1207(2). See, *United States v. Velasquez*, 802 F.2d 104 (4th Cir. 1986); *United States v. Novak*, 715 F.2d 810 (3d Cir. 1983); *United States v. Stafford*, 697 F.2d 1368 (11th Cir. 1983).

As a part of the Nebraska speedy trial act, or "6-month rule," § 29-1207 in pertinent part provides:

(1) Every person indicted or informed against for any

offense shall be brought to trial within six months, and such time shall be computed as provided in this section.

(2) Such six-month period shall commence to run from the date the indictment is returned or the information filed. . . .

. . . .

(4) The following periods shall be excluded in computing the time for trial:

(a) . . . [T]he time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement and motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel. . . .

. . . .

(f) Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause.

Section 29-1208 states: "If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense." To obtain absolute discharge under § 29-1208, a defendant is not required to show prejudice sustained as the result of failure to bring the defendant to trial within 6 months in accordance with § 29-1207(2). See, *People v. Wilson, supra; State v. Williams,* 85 Wash. 2d 29, 530 P.2d 225 (1975); *United States v. Mehrmanesh,* 652 F.2d 766 (9th Cir. 1981).

Since the information against Lafler was filed on September 16, 1985, the last day for commencement of Lafler's trial was March 17, 1986 (March 16 being a Sunday), unless any period between the filing of the information and March 16 must be excluded in computing the time for commencement of trial.

Lafler's plea in abatement was pending 15 days, from September 24, 1985, until October 8, inclusive, when the

transcription of the preliminary hearing was presented to the court with a request for argument on such plea. After the hearing on October 8 and until argument on the plea (February 4, 1986), 119 days elapsed, with an additional 7 days passing while the court had Lafler's plea under advisement and before the court overruled Lafler's plea on February 11. Therefore, from September 24, 1985 (filing of plea in abatement), to and including February 11, 1986 (court's ruling on plea), there are 141 days.

Lafler acknowledges he is responsible for the periods from September 24 to October 8 in 1985 and from February 4 to 11 in 1986, or a total of 22 days. Thus, Lafler contends that the last day for commencement of his trial was April 7 (March 16 plus 22 days). Any time outside those 22 days, Lafler argues, is charged to the State on account of judicial delay which Lafler characterizes as "inordinate or unreasonable."

The State contends that Lafler was charged with the entire elapsed time from the filing of his plea in abatement until disposition by the court, or all 141 days during which the plea in abatement was pending and under advisement by the court. According to the State, the date for commencement of Lafler's trial was extended 141 days beyond March 16, so that the last day to begin trial was August 4, 1986 (since August 3 was a Sunday). Because Lafler's trial commenced on May 22, the State argues, Lafler was brought to trial within the time prescribed by § 29-1207.

The primary burden is on the State to see that an accused is brought to trial within the time prescribed by the Nebraska speedy trial act. See, *State v. Bolton*, 210 Neb. 694, 316 N.W.2d 619 (1982); *State v. Beck*, 212 Neb. 701, 325 N.W.2d 148 (1982). To avoid a defendant's absolute discharge from an offense charged, as dictated by § 29-1208, the State, by a preponderance of evidence, must prove existence of a period of time which is authorized by § 29-1207(4) to be excluded in computing the time for commencement of the defendant's trial in accordance with the Nebraska speedy trial act, or "6-month rule." See, *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972); *State v. Beck, supra; State v. Bolton, supra.* Under § 29-1207(4), some illustrations of time excluded, in computing

the statutory deadline for trial, include a discovery motion for production of documents in the prosecutor's possession, see *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983), and defendant's motion for depositions and obtaining depositions of prospective witnesses, see, *State v. Fatica*, 214 Neb. 776, 336 N.W.2d 101 (1983), and *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). As we expressed in *State v. Craig, supra* at 72, 361 N.W.2d at 210: "An accused cannot generally take advantage of a delay in being brought to trial, where he is responsible for the delay either by action or inaction."

Lafler argues that the time from filing a pretrial motion until its final disposition is not an absolute exclusion in computing the time for commencement of trial under § 29-1207, but, rather, only a reasonable postfiling period may be excluded, that is, exclusion of a reasonable time until final disposition of such pretrial motion. In support of his position, Lafler relies on *State v. Wilcox*, 224 Neb. 138, 395 N.W.2d 772 (1986), wherein this court ruled that a defendant was entitled to discharge in view of an unreasonable delay condemned by § 29-1207(4)(f), which excludes "Other periods of delay not specifically enumerated [in § 29-1207], but only if the court finds that they are for good cause." In *Wilcox*, the State filed the information on October 27, 1983, and Wilcox filed a motion to suppress evidence on January 12, 1984. After Wilcox had rested his case during the evidential hearing on his motion, which was held on January 25, the State asserted that Wilcox lacked standing to contest the search of an outbuilding on the premises occupied by Wilcox. The court requested briefs on the issue of Wilcox's standing and ordered an adjournment of the suppression hearing until February 22. However, on February 13 the trial judge indicated that he was going to recuse himself, and did recuse himself on April 10, when a second or successor judge contacted counsel but took no action regarding Wilcox's pending motion to suppress. No action occurred in Wilcox's case until August 20, 1985, when a third judge entered the proceedings and obtained a transcript of the suppression hearing held before the first judge on January 25, 1984. That third judge, having considered the question about Wilcox's standing, overruled the motion to suppress on September 5.

From filing of the information against Wilcox until disposition of the motion to suppress, 1 year 7 months 24 days elapsed, including the unexplained inactivity from April 10, 1984, until August 20, 1985, a period consisting of 1 year 4 months 10 days. Wilcox's trial commenced on September 20, 1985; 1 year 10 months 24 days after the information had been filed. In *Wilcox* we reasoned that delay in bringing Wilcox to trial did not totally result from his motion to suppress, but was caused in great part by some unexplained judicial inactivity after the first judge's recusal in Wilcox's case. Referring to § 29-1207(4)(f), we concluded: "Judicial delay, absent a showing of good cause, does not suspend a defendant's right to a speedy trial." 224 Neb. at 142, 395 N.W.2d at 775. Because the delay in progression toward trial in *Wilcox* was not justified by "good cause" pursuant to § 29-1207(4)(f), Wilcox was entitled to absolute discharge in accordance with § 29-1208.

In suggesting a reasonableness standard, Lafler misplaces reliance on *State v. Wilcox, supra*, which, as we have pointed out, involved delay considered under § 29-1207(4)(f), whereas Lafler's case involves a plea in abatement, one of the specifically enumerated or described periods of delay which "shall be excluded in computing the time for trial" pursuant to § 29-1207(4)(a). While § 29-1207(4)(f) does relate to exclusion of delays "for good cause," conspicuously absent from § 29-1207(4)(a) is any limitation, restriction, or qualification of time which may be utilized for disposition of specifically mentioned pretrial motions, including a plea in abatement. We observe that, pursuant to § 29-1207(4)(e), exclusion of a "reasonable period of delay" is warranted in certain cases involving joinder of codefendants for trial, where there is "good cause" for not granting a severance of trials.

We note that § 29-1207(4)(a) of Nebraska's speedy trial act is substantially similar to the federal Speedy Trial Act of 1974, 18 U.S.C. § 3161 (1982), which, in part, provides:

> (h) The following period of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other

proceedings concerning the defendant, including but not limited to—

. . . .

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . . .

The federal Speedy Trial Act of 1974 also provides for exclusion of "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). The foregoing provisions of the federal Speedy Trial Act were considered by the U.S. Supreme Court in *Henderson v. United States*, 476 U.S. 321, 106 S. Ct. 1871, 90 L. Ed. 2d 299 (1986), where the Court concluded that excludable time for delay resulting from any pretrial motion is not limited to reasonably necessary delays. In *Henderson*, the Court stated:

On its face, subsection (F) excludes "[a]ny period of delay" caused by "any pretrial motion," "from the filing of the motion through the conclusion of the hearing." The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not. Moreover, subsection (F) does not require that a period of delay be "reasonable" to be excluded, although Congress clearly knew how to limit an exclusion: in § 3161(h)(7), Congress provided for exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Apart from this single instance, every other provision in § 3161(h) provides for exclusion of "any period of delay."

406 U.S. at 326-27.

As was the situation involving Congress and the federal Speedy Trial Act of 1974, the Nebraska Legislature, in § 29-1207(4)(a), has not indicated a limitation, restriction, or qualification of time to be excluded as the result of a defendant's specific pretrial act or conduct, that is, exclusion of a period of delay in computing the time for commencement of

We, therefore, hold that any delay caused by the defendant's act or conduct, namely, those pretrial situations or matters described or characterized in § 29-1207(4)(a), is automatically excluded in computing the time when the defendant's trial must commence pursuant to the Nebraska speedy trial act. Any period of delay resulting from a defendant's act or conduct specifically mentioned in reference to the pretrial matters or situations described or characterized in § 29-1207(4)(a) is computed without consideration whether such delay was reasonably necessary. However, a period of delay resulting from other than the defendant's act or conduct described or characterized in § 29-1207(4)(a) may be excluded in computing the time for commencement of a defendant's trial, if such delay occurred on account of "good cause," as provided in § 29-1207(4)(f).

As a result of our holding in this case, the period of 141 days, that is, the entire period from the filing of Lafler's motion on September 24, 1985, until the court's disposition of such plea on February 11, 1986, is excluded in computing the time for commencement of Lafler's trial. By adding 141 days to the date of March 16, 1986, the last day on which Lafler's trial could have commenced under the Nebraska speedy trial act was August 4, 1986. Lafler's trial, which in fact started on May 22, 1986, was commenced within the time prescribed by § 29-1207. The court was correct in overruling Lafler's motion to discharge him from the offenses charged in the information.

INSTRUCTION ON CONSPIRATORIAL OVERT ACT

In *State v. Copple*, 224 Neb. 672, 692, 401 N.W.2d 141, 155 (1987), we stated:

trial pursuant to the Nebraska speedy trial act. If the Legislature had intended the phrase "reasonable time" to apply to the situations described in § 29-1207(4)(a), as was done by use of the phrases "reasonable period of delay" in § 29-1207(4)(e) and "good cause" in § 29-1207(4)(f), the Legislature would have inserted such phraseology into § 29-1207(4)(a). We decline to rewrite the provisions of § 29-1207(4)(a) to include and require a reasonable time or good cause for delay in disposition of the pretrial matters described or characterized in § 29-1207(4)(a) as a part of the Nebraska speedy trial act.

act or conduct, namely, those pretrial situations or matters described or characterized in § 29-1207(4)(a), is automatically excluded in computing the time when the defendant's trial must commence pursuant to the Nebraska speedy trial act. Any period of delay resulting from a defendant's act or conduct specifically mentioned in reference to the pretrial matters or situations described or characterized in § 29-1207(4)(a) is computed without consideration whether such delay was reasonably necessary. However, a period of delay resulting from other than the defendant's act or conduct described or characterized in § 29-1207(4)(a) may be excluded in computing the time for commencement of a defendant's trial, if such delay occurred on account of "good cause," as provided in § 29-1207(4)(f).

As a result of our holding in this case, the period of 141 days, that is, the entire period from the filing of Lafler's motion on September 24, 1985, until the court's disposition of such plea on February 11, 1986, is excluded in computing the time for commencement of Lafler's trial. By adding 141 days to the date of March 16, 1986, the last day on which Lafler's trial could have commenced under the Nebraska speedy trial act was August 4, 1986. Lafler's trial, which in fact started on May 22, 1986, was commenced within the time prescribed by § 29-1207. The court was correct in overruling Lafler's motion to discharge him from the offenses charged in the information.

## INSTRUCTION ON CONSPIRATORIAL OVERT ACT

In *State v. Copple*, 224 Neb. 672, 692, 401 N.W.2d 141, 155 (1987), we stated:

An overt act manifests that a conspiracy is "still at work." [Citation omitted.] Also, an overt act, as something done pursuant to a conspiracy, tends to show a preexisting conspiracy and manifests an intent or design toward accomplishment of a crime. . . . An overt act, by itself, need not have the capacity to accomplish the conspiratorial objective and does not have to be a criminal act.

See, also, *State v. John*, 213 Neb. 76, 328 N.W.2d 181 (1982).

The instruction given by the court comports with the characterization of "an overt act" expressed in *State v. Copple, supra,* and *State v. John, supra.* Lafler's assignment of error regarding the court's action on instructions is without merit.

### JUROR QUESTION

As noted, the bill of exceptions does not contain any of the voir dire during the impaneling of the jury in Lafler's case. We do not have a record reflecting what actually transpired during that voir dire and are confronted with a situation involving expressions of recollection on the part of court and counsel.

In *Sandomierski v. Fixemer*, 163 Neb. 716, 718, 81 N.W.2d 142, 145 (1957), we stated:

Alleged misconduct of counsel in argument to a jury cannot be properly shown by affidavit or evidence taken in support of a motion for a new trial, and to preserve such error the statements must be taken by the official court reporter at trial, together with the objections made thereto and the court's ruling thereon.

See, also, *Garska v. Harris*, 172 Neb. 339, 109 N.W.2d 529 (1961).

Recently, in *Johannes v. McNeil Real Estate Fund VIII, ante* p. 283, 287, 404 N.W.2d 424, 428 (1987), we expressed:

[E]rrors predicated on occurrences during the course of closing arguments cannot be shown by affidavit. In order that there may be an opportunity to make an accurate record, the proper procedure, when the full arguments are not being reported, is to call in the official reporter and make a record of what occurred part of the bill of exceptions. [Citing *Sandomierski v. Fixemer, supra.*] While it is in any event appropriate to make such a record

at the close of the argument, see *Sandomierski v. Fixemer, supra*, the parties can avoid disputes about what occurred by exercising their right to have the entire arguments reported. See, Neb. Ct. R. of Official Ct. Rptrs. IV-B (rev. 1986) . . . .

The rule set forth in *Johannes, supra*, concerning counsel's summation also applies to occurrences during the conduct of voir dire examination. This court will not undertake to resolve disputes about what is. claimed to have happened, when a record of the voir dire examination could have been made. We find no abuse of discretion by the trial court in denying Lafler's request to present testimony regarding the voir dire examination of the jury.

AFFIRMED.