STATE OF NEBRASKA, APPELLEE, V. DALE A. BROWN, ALSO KNOWN AS DOOBIE BROWN, APPELLANT.

335 N.W.2d 542

Filed June 17, 1983. No. 82-471.

Dennis R. Keefe, Lancaster County Public Defender, and Gerald L. Soucie, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

SHANAHAN, J.

Defendant, Dale A. Brown, was charged in the District Court for Lancaster County with robbery, found guilty by a jury, and sentenced to a term of 5 to 12 years in an institution under the jurisdiction of the Department of Correctional Services. We reverse and remand for a new trial.

In the early morning of April 25, 1981, Ellis Johnston unlocked and entered his trailer house near the Lincoln Gun Club. As Johnston walked down an unlighted hallway he was "hit in the head" and dropped to the floor. Johnston said he was beaten as he lay on the floor. Although he later lost con-

sciousness, Johnston did recall two men in the darkened hallway at the time of the assault. When Johnston regained consciousness he discovered that a large sum of money was missing from his billfold, and he then called the Lincoln Police Department. After a preliminary investigation the police took Johnston to the hospital for medical attention for facial cuts, injury to his right hand, and a broken nose. Also, the police took photographs depicting Johnston's injuries. Johnston was not able to identify his assailants, and he gave the police inconsistent and vague descriptions of the assailants.

Dale Brown was charged with robbing Johnston and was arrested on June 24, 1981. The information charging Brown was filed in the District Court for Lancaster County on July 15, 1981, and on July 16 Brown filed a motion, pursuant to Neb. Rev. Stat. § 29-1912(1)(e) (Reissue 1979), seeking disclosure of "results and reports of physical or mental examinations, and of scientific tests." At arraignment on July 16 the court sustained Brown's motion for discovery. Brown filed an additional motion on July 16, i.e., to take the depositions of three witnesses named on the information. The court, on July 24, authorized those depositions of the prospective witnesses. On August 20 the State filed a "Response to Order for Discovery" and alleged that the State "knows of no results or reports of physical or mental examinations or scientific tests or experiments made in connection with this case." Brown was released on bond on September 1, 1981.

A third motion for discovery was filed by Brown on September 18. This motion was in four parts, namely: sought the written statements of those persons deposed pursuant to Brown's motion of July 16, asked for the description given to the police by Johnston regarding his assailants, inquired about plea agreements extended to any witnesses for the State, and demanded information regarding police informants who assisted in the surveillance of

Brown while he was in jail. This motion lay dormant until October 26, when the existence of such motion was called to the attention of the trial judge during a meeting in chambers with counsel on other aspects of the proceedings. The judge ordered the State to provide Brown with Johnston's description of the assailants but took under advisement the three remaining parts of the motion. On October 26 Brown indicated readiness for trial, but the District Court allowed counsel 7 days to file briefs concerning those aspects of the motion which had been taken under advisement. Also, on October 26 the State supplied Brown with Johnston's description of his assailants. Possessing that description, Brown next filed a motion on November 20 to obtain the deposition of Officer Donald Wiles, a policeman to whom Johnston had described the assailants. By an order entered November 30 the court authorized the deposition of Wiles, which was taken on December 1. Brown never filed any brief concerning the parts of the motion which were taken under advisement, and that motion remained undisposed until December 28, when the court on its own overruled the balance of that motion which had been on file since September 18.

On February 18, 1982, Brown filed a motion to dismiss the proceedings, claiming denial of his right to a speedy trial and, further, claiming a right to dismissal of the proceedings because he had not been brought to trial within 6 months, as required by Neb. Rev. Stat. § 29-1207(1) (Reissue 1979). The motion to dismiss was heard on March 23, taken under advisement, and overruled on March 25. Trial commenced with the selection of a jury on March 29. On April 5 that jury returned a verdict of guilty. Brown filed two motions for new trial. In substance, the first motion for new trial claimed that Brown had been deprived of his right of speedy trial. The second motion alleged newly discovered evidence, inasmuch as Brown had learned from a presentence re-

port that the police possessed information in April 1981 regarding the "results and reports" mentioned in Brown's motion for discovery filed on July 16, 1981. This information included an attempted hypnotic session involving Johnston, a telephonic conference between police and a psychologist who "advised" that the description of Johnston "would fit the description of a pathological liar," and a conference between an officer and a pathologist who expressed an opinion to the effect that Johnston's injuries were inflicted and sustained in a manner different from that described by Johnston. This second motion for new trial alleges that Brown was denied a fair trial because the State withheld information required to be disclosed under the Nebraska and U.S. Constitutions and under the discovery statutes concerning criminal cases.

Among Brown's assignments of error are: (1) The District Court's incorrect exclusion of certain time in determining the date by which Brown must have been brought to trial under the Nebraska "6-month rule"; (2) A denial of the constitutionally guaranteed right of speedy trial; and (3) A denial of a fair trial because the State failed to disclose material requested in a pretrial motion for discovery.

First, we consider whether Brown received a speedy trial in accordance with § 29-1207. Because the information against Brown was filed on July 15, 1981, the last day for commencement of trial was January 15, 1982, that is, assuming no time is excluded from such 6-month period pursuant to § 29-1207(4)(a). Cf. *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981).

All motions filed by Brown for discovery are pretrial motions, and, as such, "the time from filing until final disposition" must be excluded in computing the last day permissible for trial. There is nothing in the record indicating the nature of the information elicited from the deponents named on the information, but we surmise that Brown did use

such information to prepare for trial or to formulate trial strategy. Consequently, the period of 9 days is excluded from computing the time for trial, namely, from the day Brown filed the motion on July 16 until the trial court authorized the depositions on July 24.

Further, when Brown obtained Johnston's description of his assailants in response to the motion of September 18, Brown embarked on additional discovery, namely, the deposition of Officer Donald Wiles, which the defense used at trial as an attack on Johnston's credibility and as an attempt to erode Johnston's description of his assailants. As matters developed at trial, identification of Brown as an assailant was based on circumstantial evidence. In the trial court's eyes, Brown's deposing Wiles on December 1, 1981, indicated that Brown was still relying upon his motion of September 18 to acquire further information in preparation for trial. Brown's reason for not pursuing the balance of the motion and any explanation for allowing that motion to lie dormant are matters of conjecture and questionable tactics. If Brown did not wish to pursue that motion, he should have immediately contacted the trial court and withdrawn the motion. Excluded from computing the time for trial is the period from filing the motion on September 18 until final disposition of such motion by the trial court by its own action on December 28, that is, 102 days.

Combining the two periods involving the motions for discovery, there are 111 days. Using the method set forth in *State v. Jones*, *supra*, and adding 111 days of exclusions, the last day for commencement of trial was May 6, 1982. Brown was brought to trial well within such 6-month limitation prescribed by § 29-1207, and therefore there was no error in overruling Brown's motion for a new trial in that regard.

Brown relies on *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), in contending that he was denied a speedy trial under the sixth amendment to the U.S. Constitution. *Barker* recites a

"balancing test" which requires courts to approach each case on an ad hoc basis. This "balancing test" involves four factors bearing upon questions of speedy trial, namely, "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* at 530. As further stated in *Barker* at 533: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." According to *Barker*, at 531, prejudice may result from prolonged incarceration or from an inability to prepare for trial.

Applying the "balancing test" of *Barker* to the present case, Brown has not been denied his constitutionally protected right to a speedy trial. Brown was brought to trial a little over 8 months after the information was filed. A substantial part of that time was used for Brown's pretrial motions and his pursuit of discovery. Therefore, any delay was neither inordinate nor unreasonable. Although Brown informed the district judge that he was ready for trial, this statement of readiness was followed by Brown's additional discovery, which was ultimately used as a part of his defense at trial. Such conduct speaks louder than Brown's rather hollow request for a trial of his case. Also, Brown was released from jail on September 1 and remained at liberty until his trial commenced on March 29, 1982. Regarding preparation for trial, we can only infer that Brown was adequately prepared, because 4½ months of the 8 months between the filing of the information and trial were used for discovery by Brown. The trial court was correct in overruling Brown's motion claiming a denial of a speedy trial.

Before addressing the effect of the State's nondis-

closure of requested information, it is necessary to review the origin of §§ 29-1912 et seq., which contain provisions for discovery in criminal proceedings.

*Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), dealt with nondisclosure on the part of the prosecutor. *Brady* recognized that due process requires the government to disclose information favorable to the accused, namely, exculpatory material. But *Brady* did not focus on the accused's ability to prepare for trial, because *Brady* was not a rule for discovery. See *United States v. Kaplan,* 554 F.2d 577 (3d Cir. 1977). In the wake of *Brady* the Federal Rules of Criminal Procedure were revised in 1966 so that discovery in criminal cases was broadened and liberalized. See Fed. R. Crim. P. 16.

In the Eightieth Session of the Nebraska Legislature, L.B. 1417 was introduced. 1969 Neb. Laws, Ch. 235, p. 867. That bill is presently §§ 29-1912 et seq., which provide the procedure for discovery in criminal cases. The "Introducer's Statement of Purpose" recites that L.B. 1417 was designed to "implement the Federal Criminal Procedure whereby a defendant in a criminal case may have access to certain records . . . so that both parties will be better prepared for the trial . . . ." Hearings before the Committee on Judiciary of the Legislature developed that L.B. 1417 was based on Rule 16 of the Federal Rules of Criminal Procedure and would "establish in Nebraska, a criminal procedure which is adopted in the federal statutes." The committee statement on L.B. 1417 acknowledged "that defendants have the right of access to evidence in the hands of the prosecuting attorney to enable the defendant to prepare his defense." In 1969 the Nebraska Legislature enacted the present statutes for discovery in criminal cases, with language similar to that found in the Federal Rules of Criminal Procedure.

Under § 29-1912(1)(e) a defendant may request

permission to inspect and copy "[t]he results and reports of physical or mental examinations, and of scientific tests, or experiments made in connection with the particular case . . . ." Brown, by his motion filed July 16, sought such information from the State. The State responded that it had no knowledge of the material.

After his conviction Brown inspected a presentence report which revealed notes of police Detective Splichal concerning his investigation of the incident. Those notes reflected that on April 27, 1981, Detective Splichal and another officer tried to have Johnston hypnotized but that hypnosis was not possible because Johnston was having difficulty breathing. Splichal's notes also recited that on April 29 he conferred by telephone with Dr. Osborne, a psychologist, who "advised that from what I have described him [Johnston] this would fit the description of a pathological liar and that of his patterns." The notes continued: "He [Dr. Osborne] felt the way to deal with the individual [Johnston] would be to stand firm on what had occurred and our feelings and to make it clear to him that we did not feel that the incident had occurred as he stated and that in order for us to help him he would have to tell us the complete truth on what occurred." Later that same day Splichal also conferred with a pathologist, Dr. Harlan Papenfuss, who had examined the photographs depicting Johnston's injuries from the assault. According to Dr. Papenfuss, the wound on Johnston's head was made by a sharp instrument delivered from directly in front of Johnston and the other injuries of Johnston were characteristically those received in a fistfight. In short, Dr. Papenfuss concluded that the injuries were not consistent with Johnston's account of the assault.

*James v. Commonwealth*, 482 S.W.2d 92 (Ky. 1972), dealt with a prosecutor's failure to disclose information requested under a statute almost identical with § 29-1912(1)(e). The Kentucky court stated

at 94: "A cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused cannot be countenanced. . . . It is said in Wright, Federal Practice and Procedure: 'The second category of materials obtainable virtually as a right under Rule 16(a) is results or reports of physical or mental examinations . . . within the possession, custody, or control of the government . . . .' "

In *State v. Hurd*, 520 S.W.2d 158 (Mo. App. 1975), the defendant requested medical reports, information which the state did not disclose, notwithstanding that a deputy sheriff had knowledge of the findings of an examining physician regarding the path of a fatal bullet. In ordering a new trial the Supreme Court of Missouri held at 164-65: "It is common knowledge and to be presumed that an officer and agent of the law would officially report to the proper authorities the findings of his investigations, tests and examinations relative to the accused's connection with the crime charged. . . .

. . . .

". . . Nondisclosure by the state of a part of the deputy sheriff's knowledge of the chemical tests and of the result of the examining physician's findings was of such a nature that without disclosure the defendant's trial could be viewed as fundamentally unfair." Cf., *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842 (4th Cir. 1964) (pertaining to prejudicial effect of prosecutorial nondisclosure of information in the possession of police); *United States v. Beasley*, 576 F.2d 626 (5th Cir. 1978).

Matters affecting the credibility of a critical or major witness are material to the defense in a criminal case. See *United States v. Boffa*, 513 F. Supp. 444 (D. Del. 1980). Information is material in the preparation of a defense if there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony,

or assisting impeachment or rebuttal. *United States v. Felt*, 491 F. Supp. 179 (D. D.C. 1979). If the information may affect the outcome of the trial, then it is a proper subject for discovery. *Briggs v. Raines*, 652 F.2d 862 (9th Cir. 1981).

As expressed in *United States v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969): "The test, however, is not how the newly discovered evidence . . . would affect the trial judge or ourselves but whether, with the Government's case . . . already subject to serious attack, there was a significant chance that this added item, developed by skilled counsel as it would have been, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." See, also, *United States v. Guillette*, 404 F. Supp. 1360 (D. Conn. 1975).

In summary, while *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), imposed a constitutional mandate for disclosure in criminal cases, a statutory design for discovery, such as the Federal Rules of Criminal Procedure or §§ 29-1912 et seq., can exact more than the constitutional minimum, so that courts must focus on information potentially useful to the defense. *United States v. Beasley, supra.*

In the present case Johnston was not hypnotized. The mere attempt to hypnotize Johnston did not constitute an examination, test, or experiment. The State's failure to disclose the abortive session for hypnosis of Johnston was not prejudicial. The information from the psychologist was based upon subjective data supplied by one of the investigating officers, which apparently included the officer's impressions and conclusions concerning Johnston. The response by the psychologist may have been a commentary on the data supplied by the police, but the psychologist's response did not constitute a report of an examination under the circumstances. Nondisclosure of information from the psychologist caused no prejudice to Brown. On the other hand, after his

examination of Johnston's photographs, the pathologist expressed an opinion to the police regarding both the means used and manner in which wounds were inflicted upon the victim, that is, an opinion which contradicted the victim's and eyewitness' version of the assault. The pathologist's opinion concerning causation of the wounds was a report within the purview of § 29-1912(1)(e), and the State should have disclosed those parts of the detective's notes containing the report from the pathologist. The pathologist's report may have caused doubt in Johnston's account of the assault and may have cast doubt on Johnston's inability to identify his assailants. Such information was material to the preparation of Brown's defense, and without the requested information Brown did not receive a fair trial. The District Court was incorrect in denying Brown a new trial on account of the State's nondisclosure of the requested information.

Because we have concluded that Brown must have a new trial, it is not necessary that we consider the other assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.