STATE OF NEBRASKA, APPELLEE, V. ANDREW TUTTLE, APPELLANT.

472 N.W.2d 712

Filed August 2, 1991.    No. 89-1148.

Jeffrey M. Doerr for appellant.

Don Stenberg, Attorney General, Mark D. Starr, and Wynn Clemmer for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

A jury in the district court for Knox County convicted Andrew Tuttle of burglary, which is a violation of Neb. Rev. Stat. § 28-507(1) (Reissue 1989) and a Class III felony. The district court sentenced Tuttle to imprisonment for a term of 20 to 30 months, with credit for custodial time pending disposition of Tuttle's case.

In his three assignments of error, Tuttle claims that the evidence is insufficient to sustain his conviction, he was denied the due process right to a fair trial when the court rejected his motion to take depositions of all witnesses listed on the State's information, and the sentence imposed is excessive.

After Tuttle's case was argued in the Appellate Division of the District Court and subsequent to our review of the disposition recommended by the appellate division, we granted reargument on the question of objective standards for obtaining depositions as discovery authorized by Neb. Rev. Stat. § 29-1917 (Reissue 1989), a part of Nebraska procedure applicable to criminal cases.

## BACKGROUND FOR BURGLARY

On Monday, January 9, 1989, Deputy Sheriff Arthur Denny received a telephone call from Kim Keeble, an employee at the Santee Sioux Tribal Building, about a computer, typewriter, and payroll disks which were missing from the building. During his investigation, Denny found several footprints in the snow at an uncommonly traveled area near a window of the tribal building. Below the window lay a damaged screen that had been fastened to the window on January 6, the Friday before the break-in. On January 13, Denny recovered the typewriter and computer from an outside toilet located a few blocks from the tribal building, but the payroll disks were never found.

According to 13-year-old Jared McBride, Tuttle, who was 21 years of age, asked him on January 7 to help Tuttle and three others, Bryan Frazier, Nathan Ferris, and Eric DeCory, "break into" the tribal building. Near midnight on January 7, when the quintet arrived at the tribal building, Tuttle "ripped a screen"

off a window, and through the open window pushed McBride and DeCory, who then opened a door for Tuttle and Frazier. Outside the building, Ferris was stationed as a lookout. After those inside had "grabbed" the computer and typewriter, Tuttle carried the computer to the outdoor toilet. None of the intruders on January 7 had permission to enter the Santee Sioux Tribal Building or remove any property from the building.

On April 14, 1989, Tuttle was charged with burglary under § 28-507(1), which states: "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value."

## MOTION FOR DEPOSITIONS

On May 4, Tuttle, through his lawyer, filed a "Motion for Leave to Proceed Informa Pauperis to Take Depositions" of the seven persons listed as witnesses on the information, namely, McBride, Keeble, Frazier, DeCory, Lance Brandt, and Deputy Sheriffs Don Henery and Denny. In his motion, Tuttle alleged that each of the seven witnesses was "material and relevant to the guilt or punishment of [Tuttle]."

At a May 15 hearing on the motion for depositions, Tuttle's lawyer stated that the motion was based on § 29-1917, which in pertinent part provides:

(1) . . .[A]t any time after the filing of an indictment or information in a felony prosecution, the prosecuting attorney or the defendant may request the court to allow the taking of a deposition of any person other than the defendant who may be a witness in the trial of the offense. The court may order the taking of the deposition when it finds the testimony of the witness:

(a) May be material or relevant to the issue to be determined at the trial of the offense; or

(b) May be of assistance to the parties in the preparation of their respective cases.

. . . .

(4) A deposition taken pursuant to this section may be used at the trial by any party solely for the purpose of

contradicting or impeaching the testimony of the deponent as a witness.

When the court inquired about necessity of the seven depositions, Tuttle's lawyer responded:

I believe all witnesses we are requesting to depose are material to the case of the defendant . . . .

. . . .

. . . Kim Keeble . . . works at the [tribal building] which was the place the robbery apparently was perpetrated. [The other witnesses] either have given written statements or are apparently implicated in the offense, although apparently [have] not been charged at the present time.

. . . .

. . . [A]ll those individuals . . . who either have . . . [given] a written statement . . . or who . . . have not made written statements but who have been named in the written statements given by other individuals certainly are extremely material and relevant to this particular case.

When the court asked why Tuttle's lawyer could not "interview those people," the lawyer explained: "Bryan Frazier at the present time I don't know what his whereabouts would be . . . . He's unavailable. . . . [B]ut if I had an order allowing me to [take his deposition] if he is available at some later time it would save some time coming back later and requesting permission." Tuttle's lawyer told the court that he had not attempted to interview Brandt, DeCory, or McBride and that, concerning individuals who had given statements or who were implicated in those statements, "it's very important" that Tuttle "be allowed to question them under oath prior to the trial in order to get . . . their version of the statements before trial."

The State argued that Tuttle was required "to make some sort of showing . . . that there's something going to be learned in these depositions and that we're not just engaged in busy work at this point" and emphasized that the State had given Tuttle's lawyer all police reports and written statements, "everything that the State has," regarding the witnesses listed on the information.

Before ruling on Tuttle's motion, the court stated, "I'm just not going to order wholesale depositions," but sustained

Tuttle's motion for the deposition of Keeble. The court then overruled the motion for depositions of the other named witnesses and stated that the ruling was "without prejudice to your coming back and showing special need." After the May 15 hearing concerning depositions, Tuttle's lawyer did not show the court any "special need" to take the depositions of the other six witnesses listed on the information.

In Tuttle's trial, the following testified in the State's case in chief: McBride and Deputies Denny and Henery. Brandt, DeCory, Frazier, and Keeble did not testify in Tuttle's trial. Several defense witnesses testified that Tuttle was not involved in the burglary and that Tuttle's older brother, Rodney, served as a lookout during the burglary while Frazier, who could not be located by authorities, actually entered the building and carried off the equipment. A jury found Tuttle guilty of burglary.

## SUFFICIENCY OF EVIDENCE

In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987). Accord, *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*State v. Robertson*, 223 Neb. 825, 830, 394 N.W.2d 635, 638 (1986). Accord, *State v. Zitterkopf, supra*; *State v. Reynolds, supra*.

"The intent involved in conduct is a mental process and may

be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding an incident." *State v. Pierce*, 231 Neb. 966, 971, 439 N.W.2d 435, 440 (1989). Accord *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989). "When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman*, 227 Neb. 131, 140, 416 N.W.2d 231, 237 (1987). Accord, *State v. Pierce, supra*; *State v. Swigart, supra*. " 'Circumstantial evidence' means facts or circumstances, proved or known, from which existence or nonexistence of another fact may be logically inferred or deduced through a rational process." *State v. Jasper*, 237 Neb. 754, 763, 467 N.W.2d 855, 862 (1991). Accord, *State v. Twohig, ante* p. 92, 469 N.W.2d 344 (1991); *State v. Loveless*, 234 Neb. 463, 451 N.W.2d 692 (1990). In reference to § 28-507, the statute which defines burglary, "[i]ntent sufficient to support a conviction for burglary may be inferred from the facts and circumstances surrounding an illegal entry into improvements on real estate." *State v. Vaughn*, 225 Neb. 38, 41, 402 N.W.2d 300, 302 (1987).

Evidence established that on January 7, 1989, Tuttle "ripped a screen" from a window of the tribal building and demonstrated that he forcibly entered the building after McBride and DeCory were pushed through the window and provided entry into the building for Tuttle and Frazier. Also, Tuttle's conduct in asking McBride to help him "break into" the tribal building and the fact that Tuttle left the tribal building carrying a computer indicate that Tuttle, when he entered the tribal building, had the intent to steal property of value located inside the building. Thus, the evidence produced at Tuttle's trial, construed most favorably to the State, showed that Tuttle "willfully, maliciously, and forcibly" broke into and entered the tribal building "with intent to steal property of any value." § 28-507(1). Although defense witnesses testified that Tuttle was not involved in the burglary, this court does not reweigh or resolve such conflicts in evidence or pass upon witness credibility. Therefore, we conclude that the evidence is sufficient to sustain Tuttle's burglary conviction.

## DENIAL OF MOTION TO TAKE DEPOSITIONS

Tuttle claims that the district court's refusal to permit Tuttle's obtaining depositions, authorized by § 29-1917, denied Tuttle's due process right to a fair trial.

A defendant in a criminal proceeding has no general due process right to discovery, for, as expressed by the U.S. Supreme Court in *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977):

> There is no general constitutional right to discovery in a criminal case, and *Brady* [*v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),] did not create one; as the Court wrote recently, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . ." *Wardius v. Oregon*, 412 U.S. 470, 474 [93 S. Ct. 2208, 37 L. Ed. 2d 82] (1973).

See, also, *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988).

Consequently, discovery in a criminal case is generally, and in the absence of a constitutional requirement, controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion in the discovery ruling. See, *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *State v. Blair, supra*; *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983).

Since obtaining depositions in a criminal case is governed, generally, by law or procedural rule in a particular jurisdiction, we have examined the law in other jurisdictions, only to find that rules for discovery are as variable as there are various jurisdictions. For instance, Fed. R. Crim. P. 15 states:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition . . . .

See, *United States v. Cutler*, 806 F.2d 933 (9th Cir. 1986) (Fed. R. Crim. P. 15 is unavailable for a discovery deposition, but may be used if the witness is unavailable for trial); *United States*

*v. Steele*, 685 F.2d 793 (3d Cir. 1982) (discovery depositions are unavailable under Fed. R. Crim. P. 15); *United States v. Adcock*, 558 F.2d 397 (8th Cir. 1977) (principal objective of Fed. R. Crim. P. 15 is preservation of evidence for trial, not pretrial discovery). Some jurisdictions have a discovery rule somewhat similar to Fed. R. Crim. P. 15; for example: Ala. Code § 12-21-260 (1986) (defendant may take deposition of a witness who, on account of infirmity or sickness, is unable to attend court; who resides out of the state or more than 100 miles from the place of trial; who is absent from the state; or when the defense, in whole or in part, depends exclusively on the testimony of the witness to be deposed); Ariz. R. Crim. P. 15.3 (depositions available by court order to preserve testimony or obtain discovery from an uncooperative witness); Colo. R. Crim. P. 15(a) (prospective deponent unable to attend trial or whose deposition is necessary to prevent injustice); and Ga. Code Ann. § 24-10-130 (1982) (court-ordered deposition of witness who is in imminent danger of death or threatened with death or great bodily harm as the result of the witness' status as a potential witness in a criminal trial or proceeding). Some jurisdictions authorize a defendant's obtaining depositions as a matter of right. See Fla. R. Crim. P. 3.220(h): "At any time after the filing of the indictment or information the defendant may take the deposition upon oral examination of any person who may have information relevant to the offense charged." See, also, Vt. R. Crim. P. 15(a): "A defendant or the state, at any time after the filing of an indictment or information, may take the deposition of a witness . . . ."

Consequently, we redirect our attention to § 29-1917(1), which contains the provision: "The court *may* order the taking of the deposition *when it finds* the testimony of the witness [meets certain statutorily specified qualifications.]" (Emphasis supplied.)

Since § 29-1917(1) uses the word "may" in reference to a court's order for a deposition, and since some basis must be shown to the court regarding the particular deposition sought, a requirement implicit in the phrase "when [the court] finds" that a witness' testimony meets certain qualifications specified in the statute, we conclude that a defendant is not entitled, as a

matter of right, to a deposition pursuant to § 29-1917(1).

In reference to general discovery in criminal cases, Neb. Rev. Stat. §§ 29-1912 et seq. (Reissue 1989), we have stated the cardinal rule: "If the information may affect the outcome of the trial, then it is a proper subject for discovery." *State v. Brown*, 214 Neb. 665, 675, 335 N.W.2d 542, 547 (1983). Section 29-1917 specifies the conditions for obtaining a deposition by either the State or defendant in a criminal proceeding, namely, (1) the prospective deponent's testimony may be material or relevant to an issue in the trial or (2) the deponent's testimony may assist the parties in preparing for trial of their respective cases. As we expressed in *State v. Brown, supra* at 674-75, 335 N.W.2d at 547: "Information is material in the preparation of a defense if there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal." Since a deposition is not a matter of right under § 29-1917(1), endorsement of a witness' name on an information does not render the prospective witness' testimony automatically available in the discovery process, because mere designation of a State's witness does not establish materiality or relevance of the witness' testimony or its helpfulness in preparation of a criminal case for trial. Hence, to obtain a deposition in a criminal proceeding, a party seeking a deposition must make a factual showing to the court that the deponent's testimony alternatively satisfies the statutory conditions expressed in § 29-1917(1). Without a factual showing presented to the trial court, as required by § 29-1917(1), there is little basis for an appellate review to determine whether the trial court's ruling on a discovery question is an abuse of discretion. We realize that a defendant's showing probably does not require full disclosure on a theory of defense. Somewhere short of full disclosure, or disclosure which may prejudice or seriously jeopardize a defense, a defendant must, nevertheless, present some showing with a factual basis for a deposition under § 29-1917(1).

In Tuttle's case, although there were general comments and conclusions regarding desirability of obtaining some testimony which was "very important" or "material," Tuttle's lawyer

made no factual showing which indicated materiality or relevance of any deponent's testimony or which suggested some assistance that might be gained in preparing Tuttle's defense. Would a deponent's testimony go to the witness' credibility, uncover admissible evidence, or aid in preparing witnesses for trial or corroborating testimony of defense witnesses? The district court noted the deficiency in Tuttle's showing and denied the discovery motion "without prejudice to [Tuttle's] coming back and showing special need." This gave Tuttle the opportunity to review the investigative material supplied by the State, interview witnesses in the light of that information, and determine exactly whether a deposition would be necessary to erode or refute the burglary charge against Tuttle. We can only assume that Tuttle's lawyer, in diligent response to the court's offer to reconsider Tuttle's request for depositions, contacted the persons mentioned in the State's investigation, interviewed them, was satisfied with their information in relation to the charge against Tuttle, and, as a matter of trial strategy, elected not to call those persons as witnesses for Tuttle lest their testimony be damaging rather than helpful to Tuttle's case. Also, Tuttle did not call Keeble, one of the witnesses designated in the information. The inference is that Tuttle found Keeble's account of the incident to be correct or at least unhelpful to Tuttle's defense. Of course, the court's ordering the deposition of Frazier, whose whereabouts were unknown, would have been pointless. Moreover, the district court extended to Tuttle the opportunity for further consideration of the deposition question when Tuttle was able to supply a factual showing of need for any deposition. Since Tuttle initially offered only conclusions as a ground for obtaining depositions and failed to supply a factual showing of any condition specified in § 29-1917(1), we find no abuse of discretion in the district court's declining to enter a discovery order for depositions of witnesses endorsed on the information.

Although we have disposed of Tuttle's appeal, and at the risk of obvious dicta, we offer some thoughts on possible factors which may be considered regarding a deposition pursuant to § 29-1917(1), but emphasize that the possible factors or considerations are not exhaustive and are only illustrative, since

a deposition under § 29-1917(1) is within a court's discretion and, therefore, by and large, involves a case-by-case examination. Nevertheless, some factors possibly bearing on availability of a deposition under § 29-1917(1) may include:

(1) A deponent's testimony is needed to establish or discredit a witness' credibility; for instance, a witness' perception, bias, prejudice, or interest;

(2) A strong indication that the deposition has an important role in

(a) investigation of the allegations,

(b) disclosure of admissible evidence,

(c) identification and preparation of witnesses for trial,

(d) corroboration of testimony, or

(e) assistance in impeachment or rebuttal;

(3) Support or establishment of a theory of defense or prosecution, although parties should not be obligated to disclose theories of their respective cases at the risk of forfeiting discovery;

(4) A deponent's testimony which may likely result in a defendant's exoneration;

(5) A prospective witness' unwillingness to be voluntarily interviewed by counsel, as evidenced by uncooperativeness or hostility in attempted interviews, or refusal to discuss the case;

(6) Evidence which is highly complex, such as intricate mechanical or chemical evidence or prospective testimony from an expert witness, when such evidence would be better understood, or eventually rebutted, by availability of information before trial; and

(7) An opposing party's refusal to furnish a requested copy of a witness' statement or grand jury testimony, if available.

See, *State v. Fuller*, 143 Ariz. 571, 694 P.2d 1185 (1985); *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983); *State v. Pecora*, 190 Mont. 115, 619 P.2d 173 (1980); *Kanuck v. Meehan*, 165 Ariz. 282, 798 P.2d 420 (1990); *Weatherford v. State*, 369 So. 2d 863 (Ala. Crim. App. 1979); *Dunkin v. State*, 44 Okla. Crim. 102, 279 P. 923 (1929); *Ennis v. State*, 13 Okla. Crim. 675, 167 P. 229 (1917); Mont. Code Ann. § 46-15-201 (1989); N.H. Rev. Stat. Ann. § 517:13 (Cum. Supp. 1990); Wash. Super. Ct.

Crim. R. 4.6.

## EXCESSIVE SENTENCE

In his final assignment of error, Tuttle claims excessiveness in the sentence imposed, that is, imprisonment for 20 to 30 months, with credit for 126 days' custodial time during pendency of the final disposition of the charge against him. Tuttle also claims that the district court abused its discretion in refusing to place Tuttle on probation.

Burglary under § 28-507(1) is a Class III felony, punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both, with a minimum possible penalty of 1 year in prison. See Neb. Rev. Stat. § 28-105 (Reissue 1985).

"A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed." *State v. Kitt*, 232 Neb. 237, 240, 440 N.W.2d 234, 236 (1989). Accord, *State v. Staten, ante* p. 13, 469 N.W.2d 112 (1991); *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991). "Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion." *State v. Zitterkopf*, 236 Neb. 743, 749-50, 463 N.W.2d 616, 621 (1990). This court has also said:

> [I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant.

*State v. Stranghoener*, 208 Neb. 598, 603, 304 N.W.2d 679, 682 (1981). Accord, *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989); *State v. Goodpasture*, 215 Neb. 341, 338 N.W.2d 446 (1983).

Tuttle's sentence was clearly within the possible penalty range for a Class III felony. Further, in deciding whether Tuttle was an appropriate candidate for probation, the district court considered the presentence report on Tuttle, which showed Tuttle's age, 22 years, at the time of sentencing; his drug and

alcohol abuse; and his previous convictions for assault, contributing to the delinquency of a child, impersonating a peace officer, unauthorized use of a motor vehicle, and procuring liquor for a minor. Accordingly, we cannot say the district court abused its discretion in refusing to sentence Tuttle to probation and, instead, sentencing him to prison for 20 to 30 months, a sentence which is not excessive under the circumstances.

## CONCLUSION

Since there was sufficient evidence to sustain Tuttle's conviction, the court did not abuse its discretion in refusing to grant Tuttle's request for depositions of all witnesses listed on the State's information, and Tuttle's sentence is not excessive, we affirm the district court's judgment of conviction and sentence imposed on Tuttle.

AFFIRMED.