STATE OF NEBRASKA, APPELLEE, V.
JACK E. HARRIS, APPELLANT.
640 N.W.2d 24

Filed March 8, 2002. No. S-00-686.

Emil M. Fabian and Barbara Thielen, of Fabian & Thielen, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Jack E. Harris was convicted of murder in the first degree and use of a deadly weapon to commit a felony. The primary issues presented in this appeal are whether Harris was entitled to a hearing on the voluntariness of a statement he gave to police in an unrelated investigation, whether Harris was entitled to a mistrial based on prosecutorial misconduct, and whether the district court erroneously admitted evidence of Harris' prior bad acts. Because we find Harris' claims of reversible error to be without merit, we affirm the judgment of the district court.

## II. BACKGROUND

During the summer of 1995, Harris sold a green convertible automobile to Anthony Jones, an Omaha drug dealer. During the same summer, Harris was introduced to Howard "Homicide" Hicks through a mutual acquaintance, Corey Bass. On August 23, 1995, Jones was found dead inside his apartment. The cause of death was a gunshot wound to the head.

In 1996, Harris was incarcerated in the Douglas County Correctional Facility, at the same time as Lee Warren and Tony Bass, Corey Bass' brother. On December 8, 1996, Corey Bass was murdered. Tony Bass assisted authorities in investigating Corey Bass' murder, and during that investigation, Tony Bass told police that while in jail, Harris told Tony Bass that Harris had been involved in the murder of Jones. According to Tony

Bass, Harris said that Jones had been murdered by Harris and someone named "Homicide."

In February 1997, police investigating Jones' murder spoke to Warren. Warren told police that Harris had spoken to Warren about Jones' murder and had told Warren that Jones was killed because he recognized Harris while Harris was robbing Jones.

In May 1997, police arrested Hicks for the murder of Jones. Hicks confessed and said that he and Harris had planned to rob Jones. Hicks said that Harris had killed Jones when Jones recognized Harris during the robbery.

Harris was charged by information with murder in the first degree and use of a deadly weapon to commit a felony. After Harris' first trial ended in a mistrial, Harris was retried. Tony Bass, Warren, and Hicks testified at trial substantially in accord with the statements described above, as did Robert Paylor, another witness who claimed that Harris told him about the murder of Jones. Further pertinent facts will be set forth below in more detail.

Harris was convicted, pursuant to jury verdicts, of murder in the first degree and use of a deadly weapon to commit a felony and was sentenced to life imprisonment on the murder charge and 10 to 20 years' imprisonment on the weapons charge, sentences to be served consecutively. Harris appeals.

## III. ASSIGNMENTS OF ERROR

Harris assigns that the district court erred in (1) failing to allow Harris a voluntariness hearing; (2) refusing to grant Harris a mistrial based upon the State's failure to provide Harris' statement pursuant to court-ordered discovery; (3) allowing evidence of other bad acts or crimes in violation of Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), and its own prior order; and (4) failing to grant a mistrial based upon the admission of prior bad act evidence in violation of § 27-404 and its own prior order.

## IV. STANDARD OF REVIEW

■ Because Neb. Rev. Stat. § 29-115 (Cum. Supp. 2000) commits the determination whether to entertain a motion to suppress made after the commencement of trial to the discretion of the trial court, an appellate court reviews such a determination

for an abuse of discretion. See *State v. Davlin, ante* p. 283, 639 N.W.2d 631 (2002).

■ The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Gartner, ante* p. 153, 638 N.W.2d 849 (2002).

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Davlin, supra.* Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *Id.* The admissibility of evidence under rule 404(2), § 27-404(2), must be determined upon the facts of each case and is within the discretion of the trial court. *State v. Sanchez,* 257 Neb. 291, 597 N.W.2d 361 (1999).

## V. ANALYSIS

### 1. HARRIS' STATEMENT

Harris' first and second assignments of error relate to the testimony of Leland Cass, an Omaha police detective. Cass was investigating the murder of Corey Bass and, on December 10, 1996, participated with two FBI agents in an interview of Harris regarding Corey Bass' drug dealing activities. During the interview, Harris identified several individuals whom Harris said purchased drugs from Corey Bass. Among those individuals was Hicks, whom Harris indicated was also known as "Homicide." Cass testified at trial that Harris had identified Hicks by the nickname "Homicide" during the December 10 interview. Cass' trial testimony did not reveal the other substance of Harris' statements to police, beyond Harris' knowledge of Hicks and Hicks' nickname.

### (a) Voluntariness Hearing

Harris objected to Cass' testimony and argued that he was entitled to a hearing on the voluntariness of this statement. Harris also moved for a mistrial. The district court did not hold a hearing or rule on the voluntariness of the statement. The district court determined initially that Harris had not made a showing

that the defense had not been provided with Cass' police report regarding the December 10, 1996, interview, and thus, the district court concluded that Harris' motion for a hearing was untimely. The district court also observed that the statement was innocuous and that its admission was not prejudicial to Harris. The district court offered Harris the choice of having Cass' testimony stricken from the record or cross-examining Cass on the issue.

Harris chose to cross-examine Cass instead of having the testimony stricken. On cross-examination, Harris elicited testimony from Cass that Harris had not, in the December 10, 1996, interview, admitted to knowing Hicks personally and that Harris had indicated only that he knew Hicks' nickname and knew that Hicks was involved with Corey Bass.

Harris' first assignment of error is that the district court erred in failing to conduct a hearing on the voluntariness of Harris' statement. Harris claims that he was entitled to such a hearing under *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), and § 29-115.

To be admissible, a statement or confession of an accused must have been freely and voluntarily made. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). The Due Process Clause of U.S. Const. amend. XIV and the due process clause of Neb. Const. art. I, § 3, preclude admissibility of an involuntary confession. *State v. Garner*, 260 Neb. 41, 614 N.W.2d 319 (2000). A defendant objecting to the voluntariness of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his or her confession are actually and reliably determined. *Jackson, supra*. A person who is aggrieved by a statement taken from him or her which is claimed to be involuntary may move for suppression of that statement. *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999). An objection to such a statement is waived if it is not raised by a motion prior to trial with the exception that a court may entertain such motions to suppress after the commencement of trial when the defendant is surprised by the introduction of such statements by the State. *Id.* Specifically, § 29-115 provides, in relevant part:

> Unless claims of a statement being involuntary . . . are raised by motion before trial as provided in this section, all objections to the use of such statements as evidence on

these grounds shall be deemed waived, except that the court may entertain such motions to suppress after the commencement of trial when the defendant is surprised by the introduction of such statements by the state, and also the court in its discretion may entertain motions to suppress such statements when the defendant was not aware of the grounds for any such motion before the commencement of trial, or in such situations as the court deems that justice may require.

The district court determined that it would not entertain Harris' motion to suppress, as the district court was not satisfied that Harris lacked notice of Cass' testimony. Because § 29-115 clearly commits the determination whether to entertain a motion to suppress made after the commencement of trial to the discretion of the trial court, we will review such a determination for an abuse of such discretion. Compare *State v. Davlin, ante* p. 283, 639 N.W.2d 631 (2002).

Based on the record before us, we conclude that the district court did not abuse its discretion in determining that Harris' untimely motion should not be considered. The district court was confronted with essentially a "he said, she said" scenario, as the prosecutor stated that Cass' police report regarding the December 10, 1996, interview had been provided to the defense, while defense counsel claimed that the defense had not received the report. Given the record before us, we have no basis to find that the district court abused its discretion in concluding that Harris' showing of surprise was insufficient, particularly given the court's greater familiarity with the course of the proceedings.

We are not in a position to question the veracity of either the prosecution or defense on their contradictory claims regarding the process of discovery. It is possible that the prosecution overlooked the police report of the December 10, 1996, interview and failed to provide it to the defense, and it is equally possible that the defense either misplaced or failed to appreciate the significance of the report once it was received. Given the absence of dispositive proof, we cannot conclude that the district court abused its discretion.

Therefore, Harris' first assignment of error is without merit.

## (b) Discovery Violation

Harris' second assignment of error alleges that the State violated a discovery order. Cass authored a police report regarding the December 10, 1996, interview with Harris. The defense claims that this report was not provided to it, in violation of the district court's pretrial discovery order. See Neb. Rev. Stat. § 29-1912 (Reissue 1995). Harris claims that the district court abused its discretion in failing to grant a mistrial based upon the violation of the discovery order.

Upon a defendant's proper request through discovery procedure, the State must disclose information which is material to the preparation of a defense to the charge against the defendant. *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983). In order that the defendant receive a fair trial, requested and material information must be disclosed to the defendant. *Id.*

Assuming, without deciding, that Cass' report was within the scope of the district court's discovery order, we first note that the district court concluded that an insufficient showing had been made that Cass' report had not been provided to the defense. As above, the record does not provide this court with a basis for concluding that the district court's determination was an abuse of discretion. We conclude that the district court did not abuse its discretion in failing to grant Harris' motion for mistrial where the court was not persuaded that any prosecutorial misconduct had occurred.

Second, Harris has failed to make a showing that a mistrial was necessary to cure the alleged misconduct on the part of the prosecutor. Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), *cert. denied* 531 U.S. 843, 121 S. Ct. 109, 148 L. Ed. 2d 67. When a continuance will cure the prejudice caused by belated disclosure of evidence, a continuance should be requested by counsel and granted by the trial court. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999).

Harris did not ask the district court for a continuance to respond to Cass' report of the December 10, 1996, interview, nor has Harris explained why a continuance would not have been

sufficient to cure any prejudice resulting from the allegedly belated disclosure of the report. Consequently, we conclude that Harris has not shown that a substantial miscarriage of justice has occurred to necessitate a mistrial. See *Bjorklund, supra.* Harris' failure to seek a continuance waived any rights he may have had pursuant to § 29-1912. See *Lotter, supra.*

The district court did not abuse its discretion in denying Harris' motion for mistrial. Harris' second assignment of error is without merit.

## 2. Prior Bad Acts

Harris' final two assignments of error relate to several colloquies, described below, in which Harris claims that witnesses testified to prior bad acts in violation of § 27-404(2).

It should first be noted that none of the statements that Harris claims were admitted in violation of § 27-404(2) were objected to in the district court on those grounds. A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. McLemore,* 261 Neb. 452, 623 N.W.2d 315 (2001). On appeal, the defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact. *State v. Davlin, ante* p. 283, 639 N.W.2d 631 (2002). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id.* While we proceed to consider in more detail each of the statements of which Harris complains, we first make clear that Harris has not properly preserved a § 27-404(2) issue with respect to any of the following statements:

### (a) Robert Sklenar

Robert Sklenar, an Omaha police detective, testified that Sklenar and Cass had questioned Harris about "this case and another case." After the prosecuting attorney had asked Sklenar another question and Sklenar had answered that question, defense counsel said that he would "object at this point." An off-the-record discussion was held, and examination of Sklenar resumed without the court's making any statement for the record. The statement to which the objection was directed is not apparent from the record.

It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Kanarick*, 257 Neb. 358, 598 N.W.2d 430 (1999). In this instance, neither the basis for the objection nor any ruling on the objection appears in the record. This court has held that a party who fails to insist upon a ruling to a proffered objection waives that objection. *State v. Nowicki*, 239 Neb. 130, 474 N.W.2d 478 (1991). We have also stated that a prerequisite to an appeal based upon error in the admission of evidence is a timely objection stating the grounds therefor, unless the grounds are apparent from the context. *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992). As the record before us shows neither the basis for Harris' objection nor any ruling on the objection, we conclude that Harris has waived any error in this regard.

We also note that no motion to strike any offending testimony is reflected in the record. The failure to make a timely and proper objection or motion to strike will ordinarily bar a party from later claiming error in the admission of testimony. See *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995).

Furthermore, even if an objection based on § 27-404(2) had been properly preserved, it is apparent that such objection was without merit. Section 27-404(2) provides, as relevant, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith." Sklenar's testimony established only that Harris had been questioned regarding "this case and another case." This was not evidence of other "crimes, wrongs, or acts" within the meaning of § 27-404(2).

### (b) Tony Bass

Tony Bass testified regarding conversations he had with Harris. The State asked Tony Bass whether Harris told Tony Bass about "other things" besides the murder of Jones. The State elicited testimony that Harris told Tony Bass about "other things" that involved Corey Bass and that Corey Bass was involved in drug sales. Harris objected based on a "[m]otion in limine previously filed and the Court's 402." The objection was overruled.

It should be noted that the record shows 14 pretrial motions that were made at a hearing on August 18, 1997. Among those

motions was a motion based on § 27-404; a motion evidently based on Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 1995); a motion in limine relating to the subornation of perjury; and a motion in limine relating to the use of "Homicide" as Hicks' nickname. In addition, motions in limine were argued on July 19, 1999, relating to the mention of gang activity, Harris' statements to Sklenar, and the unavailability of certain witnesses. The record does not indicate to which "motion in limine" defense counsel was referring when objecting to Tony Bass' statement.

Because Harris' objection does not identify § 27-404(2) as the basis for the objection, Harris cannot assert that ground for the objection on appeal. Harris' general objection based on the "motion in limine" does not identify which of the many previously filed motions provided the purported basis for Harris' objection. A true objection does not wander among the Nebraska Evidence Rules in the hope of eventually ending its odyssey at the doorstep of a particular rule of evidence. In seeking to exclude evidence, counsel must adhere to a basic and straightforward approach: Tell the court the reason why the evidence is inadmissible. *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994).

Furthermore, as with Sklenar's testimony above, Tony Bass' testimony established only that Harris told Tony Bass about "other things" involving Corey Bass, presumably Corey Bass' drug sales. This testimony did not establish any "crimes, wrongs, or acts" on Harris' part within the meaning of § 27-404(2) and was not inadmissible on that basis.

### (c) Robert Paylor

Paylor testified that Paylor met with Harris so that Harris could "let [Paylor] know" who had shot Paylor. Harris objected, and an off-the-record discussion was had. Neither the basis for the objection nor any ruling of the court appears on the record. The State's examination of Paylor resumed with the State's instructing Paylor to tell the jury only what Harris said about the murder of Jones.

During Paylor's remaining testimony, Paylor made a comment indicating that Harris told Paylor that "Howard" had shot Paylor. Harris objected that the answer was "nonresponsive" and moved to strike it. Even though Harris did not have standing to

object to an answer being "nonresponsive," because the State was questioning Paylor, see *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 144 N.W.2d 154 (1966), the district court nonetheless struck the answer and instructed the jury to disregard it. Harris later made a motion for mistrial based on the "unresponsive answer," which was overruled.

■ We again note, with reference to this testimony, that no § 27-404(2) objection appears in the record, and Harris cannot claim that ground on appeal as the basis for objection. No ruling on Harris' first objection appears in the record, nor does a motion to strike the objectionable testimony. Based on the same principles set forth above, Harris has also waived error in regard to this testimony. Furthermore, with respect to Paylor's second statement, Harris' objection on other grounds was sustained and the testimony stricken. Ordinarily, when an objection to or motion to strike improper evidence is sustained and the jury is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001). The record presents no basis for concluding that the district court's instruction to the jury to disregard the testimony was insufficient to dispel any prejudice to Harris.

### (d) Lee Warren

Warren testified that when police spoke to Warren, Warren gave them "more information than just the incident with Anthony Jones." The record does not indicate what that other information was, or whether it even related to Harris. Harris objected "based on the previous motion in limine and the order of the Court." The objection was overruled. Based upon the reasoning set forth above, we similarly conclude that Harris has waived any claim of error pursuant to § 27-404(2) with respect to this testimony, and even if properly made and preserved, such claim of error would be without merit.

Warren later testified that pursuant to an agreement with the State, Warren's parole would be transferred to a different state "for purposes of safety." Harris objected that the State's question was "leading and suggestive," and the objection was sustained. Harris made no motion to strike Warren's testimony. Later, Warren testified that the State had agreed "[t]o transfer me to

protect myself so I wouldn't end up dead, you know, deceased." No objection was made to this testimony.

Again, Harris waived any claim pursuant to § 27-404(2) by failing to object on that basis. Furthermore, Harris made no motion to strike the offending testimony after his objection to that testimony was sustained, and thus, he has no basis for complaining about the testimony on appeal. See *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995). With respect to the second statement made by Warren, Harris waived any claim of error by failing to object at all. In so doing, Harris also rendered harmless any error with respect to Warren's first statement, as it was rendered cumulative by the admission without objection of Warren's second statement to the same effect. See *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000).

During closing arguments, the State remarked that Warren was to be transferred to another state "so he doesn't end up dead." Harris objected that "that's improper," the objection was sustained, and the remark was stricken. As nothing in the record suggests that the striking of the State's remarks was insufficient to dispel any prejudice, we conclude that the remarks present no basis for reversal. See *McLemore, supra.*

We conclude that Harris has failed to preserve any objections pursuant to § 27-404(2), but even if preserved, those objections would present no basis for reversal. Having so concluded, we likewise conclude that the district court did not abuse its discretion in denying Harris' motion for mistrial based on the effect of the statements described above. Harris' third and fourth assignments of error are without merit.

## VI. CONCLUSION

Harris' assignments of error being without merit, the judgment of the district court is affirmed.

AFFIRMED.

CONNOLLY, J., concurring.

I agree with the majority opinion. I write separately to note that any argument between the prosecution and defense regarding whether Harris was provided with a police report during discovery could have easily been prevented. As the opinion notes, the district court was confronted with a "he said, she

said" scenario. Although the prosecutor stated that the police report had been provided to the defense, Harris' attorney maintained that it had not been received. If the prosecutor had obtained a receipt showing items that were provided to defense counsel, the problem would not have arisen. At the very least, a cover letter sent to defense counsel memorializing items provided could have helped prevent the situation from arising. The prosecutor, by documenting the information provided to defense counsel, can verify that the items were actually delivered and can prevent later issues arising regarding whether the prosecution acted properly during discovery.

Under Neb. Rev. Stat. § 29-1915 (Reissue 1995), the trial court, after granting a discovery order, has some latitude in prescribing the manner, terms, and conditions of the order. The trial court, when issuing an order, should set out the manner in which compliance with the order can be verified. Such an order would impose no hardship on anyone and would eliminate any "swearing matches" between the parties regarding compliance.