IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BUSBY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

v.

ALLEN A. BUSBY, APPELLANT.

Filed September 27, 2022.   No. A-21-904.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Timothy M. Eppler for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Allen A. Busby was convicted and sentenced on charges of first degree sexual assault and burglary. On appeal he argues that the district court for Lancaster County committed evidentiary errors and imposed excessive sentences. He also asserts that his trial counsel was ineffective. Having considered his arguments and reviewed the record, we affirm his convictions and sentences.

## II. BACKGROUND

Busby and the victim, R.R., are the parents of a daughter born in 2018. Their romantic, but tumultuous, relationship ended during the pregnancy, but because R.R. believed it was important for the child to have a relationship with her father, R.R. remained in contact with Busby, providing

him liberal parenting time. In May or June 2020, they all contracted COVID-19. At the time, Busby was living in Omaha but because of the need to quarantine, R.R. allowed Busby to stay with her and the child at her house in Lincoln. Following the 10 to 14 day quarantine period, Busby moved out of the house. At no time did he have a key to the residence.

On October 24, 2020, Busby and R.R. exchanged multiple texts to make arrangements for celebrating their daughter's birthday which was two days later. A disagreement arose between the two of them because they could not agree on the timing of their plans. R.R. left for her 7:30 p.m. to 2 a.m. shift at a gentlemen's club where she worked as a dancer. At approximately 10:30 p.m., R.R. received a text message from Busby that read "It's times like these that I regret having a child with you. I lied. I do hate you. I have so much negative energy towards you. I wanna come to your job and throw some piss on you. I've lost all respect for you." R.R. became concerned because Busby had threatened her in the past and "follows through sometimes, not all the time."

Shortly after R.R. received the text message, Busby appeared at R.R.'s place of employment. R.R. did not have any interaction with him, but his presence scared her. After R.R. finished performing on stage, she approached her manager and told her she was leaving early. Before leaving, R.R. told one of the other dancers what had happened and then left. According to R.R., this was approximately 11:30 p.m.

When R.R. arrived home, she explained to the babysitter what had happened at work and why she was home early. The babysitter was concerned about leaving R.R. alone so she stayed for approximately an hour. Before leaving, the babysitter locked all the doors and went outside to "make sure no cars were looming nearby." She described R.R. as "shaken, and distressed, and anxious, and fearful."

According to R.R., she, too, checked to make sure the doors were locked. She testified that she does not often use the back door to her house so she is unfamiliar with the locks; however, when she pulled on the door, she felt like it opened a little, so she "flipped the locks."

At 12:42 a.m., R.R. began receiving a series of text messages from Busby to which she did not respond. They began with a message that read "Why would you tell anybody what I say to you?" and culminated in one that read "Bet bitch I'm On my Way!" Busby also called her several times, but R.R. answered only the first telephone call, during which he was mad and called her names, so R.R. hung up on him.

R.R. testified that she was trying to convince herself that Busby was not really going to show up, so she lied down in her bed to try to sleep. Shortly thereafter, she heard Busby on the porch and she called the non-emergency number for the police. She explained that in the moment, she became confused and thought that dialing 911 was a request for an ambulance, and because she needed the police and not an ambulance, she searched on her telephone for the number for the Lincoln police department. R.R. was on the telephone with the dispatch center when Busby appeared inside her house. The recorded telephone call was offered and received into evidence.

Upon entering R.R.'s bedroom, Busby grabbed the telephone from her and threw her against the wall. After a struggle, he pulled her pants down and attempted to penetrate her with his penis. Unable to do so, he performed cunnilingus on her. According to R.R., Busby was vacillating between moments of rage and concern that the police were on their way. After a second failed attempt at intercourse, Busby walked out of her bedroom toward the front door. He then forced R.R. to perform fellatio on him. Afterwards, R.R. was able to escape out the front door. As she ran

down the street with Busby chasing her, the police arrived. Busby changed directions and absconded.

The investigating officer photographed several injuries R.R. sustained in the struggle. R.R. declined medical treatment initially, but sought treatment the next day and was diagnosed with a concussion. She did not have a sexual assault nurse's examination performed. The investigating officer concluded that Busby had entered the house through the unlocked back door. Busby was subsequently located, arrested, and charged with first degree sexual assault and burglary.

Trial commenced on September 10, 2021. The day prior, the State filed a notice of intent to offer evidence of other crimes, wrongs, or acts of the defendant pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404(2) (Supp. 2019). The State sought to offer a recording of a voicemail Busby left R.R. on September 4, 2020, in which he threatened to break into her house for the purpose of "terrorizing" her. The court held a hearing on September 10, 2021, at which the State argued that the evidence was inextricably intertwined with the events of October 24 and 25, 2020, because the proffered evidence is a "foreshadowing" of what actually occurred about 6 weeks later. It further argued that if the court considered the voicemail as a prior bad act, it was admissible as an exception to the prohibition against admissibility because it shows motive, opportunity, preparation, and planning. The recording of the voicemail was marked as exhibit 1.

Busby's attorney objected to exhibit 1 on the basis that it was "extremely prejudicial." He requested that if the court allowed it, that the message be edited to remove the "extremely foul language" which he considered to be "extremely prejudicial." In a written order, the court determined that exhibit 1 was inextricably intertwined with the events charged and was therefore not rule 404 evidence. And, even if it were, it was consistent with the exception for evidence showing motive, opportunity, intent, and plan. It concluded that it did not appear unfairly prejudicial within the meaning of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016).

The State also advised the court that it received a copy of a letter that morning from R.R. that she had recently received. The letter was marked as exhibit 2 and contains correspondence to R.R. from Busby suggesting that if she failed to appear for trial he could not be convicted. It also contained a second piece of paper directed to the parties' daughter from Busby. The State sought a conditional ruling from the court on the admissibility of exhibit 2.

Busby's attorney objected to exhibit 2 on foundational grounds and because any probative value was "outweighed by the prejudice." The court did not provide a conditional ruling on exhibit 2; however, when the State offered it during R.R.'s testimony, the court accepted it over Busby's "prior objections."

The jury found Busby guilty of both charges. Following a presentence investigation (PSI), the court sentenced him to 20 to 30 years' imprisonment on the sexual assault conviction and 5 to 10 years' imprisonment on the burglary conviction. The sentences were ordered to be served concurrently. Busby appeals.

## III. ASSIGNMENTS OF ERROR

Restated and renumbered, Busby assigns that the court erred in (1) admitting the September 4, 2020, voicemail (exhibit 1) into evidence; (2) admitting the letter R.R. received shortly before trial (exhibit 2) into evidence; and (3) imposing excessive sentences. He also assigns that (4) his trial counsel was ineffective in (a) selecting the jury, (b) failing to obtain a download of R.R.'s

cellular phone contents, (c) failing to request a continuance to depose an untimely endorsed witness, (d) failing to specifically object or move to redact portions of exhibit 1, (e) failing to specifically object or move to redact portions of exhibit 2, (f) failing to object to non-responsive testimony by R.R. which raised prior bad act evidence, (g) failing to cross-examine R.R. about her communication to Busby while the case was pending, (h) failing to object during the State's closing argument, and (i) failing to argue important points in closing argument.

## IV. STANDARD OF REVIEW

We review for abuse of discretion a trial court's evidentiary rulings on relevance, whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, and the sufficiency of a party's foundation for admitting evidence. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). We also review for abuse of discretion a trial court's evidentiary rulings on the admissibility of a defendant's other crimes or bad acts under rule 404(2), or under the inextricably intertwined exception to the rule. *State v. Burries, supra*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EVIDENTIARY RULINGS

### (a) Exhibit 1

Busby assigns that the court erred in admitting the September 4, 2020, voicemail (exhibit 1) into evidence. He argues that it failed to comply with rule 403 or rule 404. We disagree.

Rule 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Rule 404(2) provides the following:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under our decisional law, rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. See *State v.*

*Burries, supra*. In its pretrial ruling, the district court determined that exhibit 1 was inextricably intertwined with the facts as charged, that it was relevant to prove motive, opportunity, intent, preparation, and plan, and that its probative value was not outweighed by the danger of unfair prejudice.

Exhibit 1 is a recording of a voicemail that Busby left on R.R.'s cellular phone on September 4, 2020. In that message, Busby expressed anger and frustration over his inability to speak with their daughter because R.R. did not answer her phone and had not yet called him back. In that message, he threatened to "break her door down" and "terrorize" her.

Busby's attorney objected at the hearing on the notice of intent to offer, stating that the contents of exhibit 1 were not probative of anything and if there was probative value, the foul language contained within the message made it "incredibly prejudicial." When exhibit 1 was offered at trial, Busby stated that he "renew[ed]" his "prior objections." The court overruled the objections and allowed the message to be played for the jury.

Rule 403 requires a trial court to consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). We will not reverse a trial court's determination on this issue absent an abuse of discretion. See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *State v. Burries, supra*. Here, exhibit 1 contains evidence depicting Busby's level of anger when he perceives that he is not being given access to his daughter to his satisfaction. Moreover, we agree with the State that it is a foreshadowing of the events that actually transpired in the early morning hours of October 25, 2020. Although Busby did not have to "break her door down," he did in fact, enter her house and terrorize her. We note that the basis for Busby's rule 403 objection was the foul language he used in the voicemail. When considering whether evidence of other acts is unfairly prejudicial, we consider whether the evidence tends to make conviction of the defendant more probable for an incorrect reason. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). The vulgarity of Busby's language does not lead us to the conclusion that the exhibit was unfairly prejudicial.

We find no abuse of discretion in the court's determinations that exhibit 1 contained evidence that was inextricable intertwined with the facts alleged in this case or that the probative value of exhibit 1 was not outweighed by the danger of unfair prejudice. We recognize that the court also concluded prior to trial that exhibit 1 was admissible under rule 404(2). However, because we find that the evidence contained in exhibit 1 was inextricably intertwined and not rule 404 evidence, we need not consider that ruling.

(b) Exhibit 2

Busby argues that the court committed plain error in admitting exhibit 2 into evidence. Exhibit 2 contained two letters authored by Busby; one directed to R.R. suggesting that if she did not attend the trial he could not be convicted and the other directed to his daughter. On appeal,

Busby contends that exhibit 2 was inadmissible because it violated rule 403 and contained statements that violated rule 404 and Neb. R. Evid. 609, Rev. Stat. § 27-609 (Reissue 2016).

Prior to trial the State brought the contents of exhibit 2 to the attention of the trial, seeking a conditional ruling. It argued that it was relevant as either admissions by Busby, or consciousness of guilt, and possible witness tampering. Busby objected on foundational grounds and because any probative value was "outweighed by the prejudice." The court did not make a pretrial ruling but received the exhibit when offered at trial, over an objection by Busby in which he "renew[ed] prior objections."

On appeal, Busby directs this court to specific provisions in the letter addressed to R.R. He claims that the suggestion that R.R. not appear for court could be construed as witness tampering and, as such, rules 403 and 404 prohibited its admission. He also claims the statement "and send me back to prison. I don't think I deserve to go back there" was inadmissible under rules 403, 404, and 609. In asserting plain error, however, Busby implicitly acknowledges that no objection to this exhibit was made on these bases at trial. See *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016) (defining plain error as error unasserted or uncomplained of at trial). A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). On appeal, the defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact. *Id*. An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id*.

Plain error, however, may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. McSwine, supra*. Here, Busby claims "the District Court was derelict by not exercising its gatekeeping role and failing to analyze Exhibit 2's admissibility under any Nebraska evidentiary law." Brief for appellant at 33. However, as to a trial court's independent duty relating to exhibits, even exhibits that are the subject of a motion in limine, the Nebraska Supreme Court recently stated

> We have been directed to no rule of law in Nebraska requiring a trial judge to review, sua sponte, each exhibit offered in a criminal trial to ensure that no statement or inference contained therein might be prejudicial to one of the parties. Indeed, the only authority we find on the question from other jurisdictions supports quite the opposite conclusion.

*State v. Childs*, 309 Neb. 427, 443, 960 N.W.2d 585, 597 (2021). Consequently, the Court "decline[d] [the appellant's] invitation to impose a new duty on trial courts to review all exhibits sua sponte for potentially prejudicial content not objected to by the parties." *Id*. at 445, 960 N.W.2d at 598.

We observe that when the State requested the conditional ruling from the court, it was not proffering the exhibit as rule 404 evidence. Therefore, the district court had no independent duty to review the exhibit under that lens or the lens of rule 609. Although Busby now claims it was plain error for the court not to exclude exhibit 2 under rule 403, we note that counsel did object on

that basis and the court overruled that objection. Therefore, there can be no plain error on that basis.

Moreover, even if we could find judicial error in not reviewing the exhibit sua sponte under rules 404 or 609, we could not find the failure to exclude the exhibit rises to the level of plain error. The evidence was overwhelming that Busby willfully entered R.R.'s house through a closed door with the intent to commit a sexual assault and did, in fact, sexually assault R.R. in the first degree. Failing to correct any error in admitting exhibit 2 into evidence would not result in a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process. This assigned error fails.

### 2. EXCESSIVE SENTENCES

Busby claims that the district court abused its discretion by imposing excessive sentences. He does not allege that the sentences fall outside the statutory limits; rather, he argues that the sentences imposed do not fit him and exceed the minimum period necessary to meet the policy goals of incarceration. We disagree.

Busby was convicted of first degree sexual assault, a Class II felony, punishable by 1 to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-319 (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). He was also convicted of burglary, a Class IIA felony, punishable by 0 to 20 years' imprisonment. See, Neb. Rev. Stat. § 28-507 (Reissue 2016); § 28-105. He was sentenced to 20 to 30 years' imprisonment for the first degree sexual assault and 5 to 10 years' imprisonment for the burglary conviction with the sentences to be served concurrently. Therefore, the sentences fall within the statutory guidelines and we review for an abuse of discretion.

In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the well-established factors and any applicable legal principles in determining the sentence to be imposed. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

Busby argues that the sentences and the district court's sentencing comments demonstrate that it placed much emphasis on the nature of the crime committed and failed to give weight to the other factors such as his willingness to take responsibility for his actions and his low score on the Vermont Assessment for Sex Offenders. At sentencing, the court advised Busby that it had considered all of the comments of counsel, along with Busby's comments at sentencing, and all of the information in the PSI. It verified that Busby was 33 years of age, noted that he had obtained his GED while he was previously incarcerated, commented on his family and upbringing, and acknowledged the remorse he had expressed. It noted the relevant sentencing factors and concluded that it needed to take into account the violence involved and the need to provide safety to the community.

The PSI indicates that Busby has a prior violent criminal history which includes a conviction for robbery in 2007, a domestic abuse protection order in 2014, and a prior domestic disturbance reported by R.R. in 2019. Busby scored in the high to very high level in eight out of

the nine categories of the LS/CMI. He admitted to daily use of alcohol and marijuana and weekend use of cocaine "whenever he had the money to use it." According to the probation officer, Busby was not taking responsibility for his actions; although he did not deny the offense, he denied it was his intent to assault R.R. and blamed his actions on his substance abuse.

The district court made clear at sentencing that it considered the information contained in the PSI, the comments made at sentencing, and the required factors. There is no indication that the court did not meaningfully consider any mitigating factors contained in the record, including those Busby highlighted at sentencing and here on appeal. Therefore, based on the record before us, we cannot find that the sentences imposed constitute an abuse of discretion.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient, and that the deficient performance actually prejudiced the defense. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. However, on direct appeal, an appellant is not required to allege prejudice when claiming ineffective assistance of trial counsel. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. *Id*. The Supreme Court has often said that the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). We now turn to Busby's specific assigned errors that his counsel was ineffective.

### (a) Download of R.R.'s Cellular Phone

Busby assigns that his trial counsel was ineffective in failing to receive from the State the download of R.R.'s cellular phone contents. He argues that his trial counsel informed him that he was "unable" to receive from the State the electronic evidence downloaded from R.R.'s cellular phone data and did not seek either a discovery motion or file a motion in limine as to this evidence. Brief for appellant at 24. Consequently, he claims he was prejudiced in forming his defense and preparing for trial.

Although Busby does not indicate what beneficial evidence would have been secured by obtaining a copy of this evidence, we conclude that the assignment of error is specifically pled. The Supreme Court has stated that in a direct appeal, an appellant must state with specificity his

or her counsel's allegedly deficient conduct. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The court has explained that an assignment of error that counsel was ineffective by failing to call witnesses is a mere placeholder and insufficient to preserve a claim. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). But if an appellant identifies the witness by name or description, an appellate court does not need specific factual allegations as to what the person or persons would have said. See *State v. Blake, supra.*

We determine that Busby's argument that his counsel should have sought a discovery motion to obtain the evidence the State secured from R.R.'s cellular phone is akin to identifying a particular witness, and it is not necessary that Busby also provide specific factual allegations as to what that evidence would have revealed. Therefore, his assignment of error and supporting argument that failure to pursue a discovery motion to obtain this information prejudiced him in forming his defense and preparing for trial is sufficient to preserve it. But because the record does not reveal what information R.R.'s cellular phone contained, we cannot resolve this allegation of ineffective assistance of counsel on direct appeal.

Busby also argues under this assigned error that counsel was ineffective in failing to file a motion in limine as to the content obtained from R.R.'s cellular phone. However, the only information downloaded from R.R.'s cellular phone and introduced at trial included the voicemail from Busby in September 2020, screenshots of R.R.'s call log showing when Busby called her, and text messages between Busby and R.R. the night/morning of the incident. Busby initiated nearly all of these communications; therefore, he was aware of their content. Moreover, the State sought a pretrial ruling from the court regarding the admissibility of the September voicemail from Busby and defense counsel stated his objections to the evidence. Although the court did not make a pretrial ruling, when the voicemail was offered at trial, defense counsel renewed his objections and they were overruled. Therefore, even if counsel had filed a motion in limine as to this evidence, the result would not have been different. Busby was not prejudiced by counsel's failure to file a motion in limine as to the September voicemail. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

The other evidence offered at trial from R.R.'s cellular phone, the screen shot of R.R.'s phone log, and the text messages between Busby and R.R., were properly admitted, so again, a motion in limine would have been unsuccessful. Busby cannot show prejudice on this claim, despite his allegation to the contrary. Therefore, this claim fails.

As stated above, however, Busby's claim of ineffective assistance as it relates to the failure to seek a discovery motion as to the content of R.R.'s cellular phone is preserved.

### (b) Voir Dire

Busby claims that potential jurors were "visibly emotional" in response to the case description during voir dire and counsel was ineffective in failing to either inquire about their reactions or strike them from the jury. He asserts he was prejudiced because these jurors remained on the panel. He does not provide the names of these jurors.

The record reveals that during voir dire, two potential jurors stated that they had previously been sexually assaulted. Both of them were stricken for cause. Another potential juror volunteered that her mother was sexually assaulted; she ultimately was not selected as a juror. The record does

not reveal that any potential juror expressed any reaction to the subject matter and without identifying information, this allegation is insufficiently pled.

In the context of a claim that counsel was ineffective for calling witnesses, the Supreme Court has required that they be identified. See, *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022); *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *State v. Blake, supra*.

We find the same reasoning applies here. In order to preserve a claim that counsel was ineffective in failing to more adequately question a potential juror during voir dire, a defendant must identify that juror so that a postconviction court may later identify whether counsel was ineffective in failing to make further inquiry of that potential juror. This assignment of error fails due to lack of specificity.

## (c) Continuance

After jury selection had occurred, the district court allowed the State to endorse as an additional witness the babysitter who was at R.R.'s house on October 24 and 25, 2020. Busby claims that although defense counsel objected, he did not request a continuance to depose the witness and that this prejudiced his ability to properly prepare for trial.

Nebraska law requires a prosecuting attorney to endorse the names of known witnesses at the time the information is filed. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010); see also Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2020). The purpose of this requirement is to give the defendant notice as to witnesses who may testify against him or her and give the defendant an opportunity to investigate them. *State v. Sandoval, supra*. However, a trial court may allow witnesses to be endorsed after an information is filed when doing so does not prejudice the defendant in the preparation of his or her defense. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). In order to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice. *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997).

At the hearing on the motion to endorse, the State argued that the babysitter's name appeared in a recorded statement of the victim, but it did not know her last name at the time. Furthermore, R.R. talked about the babysitter when R.R.'s deposition was taken in March 2021. Due to these disclosures, the State asserted the defense was aware of her. Busby's attorney objected, stating the babysitter was "easily identifiable" and due to the late hour of the disclosure, requested that it be denied. Because the babysitter was known to both parties and was discussed in R.R.'s deposition "months ago" the court allowed the endorsement. Busby did not request a continuance.

Busby claims on appeal that counsel was ineffective in failing to request a continuance after the endorsement was allowed. He asserts a continuance was necessary to depose the babysitter in order to properly prepare for trial. However, Busby cannot show prejudice in counsel's failure to request a continuance to depose the babysitter. Most of the testimony she provided was cumulative of R.R.'s testimony except for her confirmation that when she returned to the house after the assault, the house was in disarray and R.R. had visible injuries that she did

- 10 -

not previously have. That testimony, however, was cumulative of the photographs that were received into evidence.

Furthermore, as the State observes, Busby elicited testimony from the babysitter that she locked the doors before leaving, which meant that R.R.'s later actions actually unlocked the back door. He used the babysitter's testimony during his closing argument to support his theory of the case that R.R. "had a plan." She intentionally unlocked the back door and let the babysitter leave so she would not be there "to interfere when the police showed up."

Given the substance of the babysitter's testimony, we find no prejudice to Busby in counsel's failure to request a continuance to depose her. This claim of ineffective assistance of counsel fails.

### (d) State's Offer of Exhibit 1

Exhibit 1 is a one minute and four second voicemail Busby left for R.R. on September 4, 2020, in which he threatened to break down the door and terrorize her. It was the subject of the State's notice of intent to offer rule 404 evidence, although the State argued it did not qualify as rule 404 evidence because it was inextricably intertwined with the events of October 24 and 25. The State asserted, in the alternative, that if it was rule 404 evidence, it was admissible as evidence of motive, intent, plan, and opportunity. In response, Busby argued that the exhibit was "extremely prejudicial" and did not prove "a whole lot of anything." He further argued that if there was any probative value, the exhibit could be narrowed down to remove "a lot of the extremely foul language, which is incredibly prejudicial."

The court issued an order, finding that the voicemail was inextricably intertwined with the alleged facts of the offenses in the case and that even if it were rule 404 evidence, it came within the exception of rule 404(2). Finally, the court determined that it was not unfairly prejudicial within the meaning of rule 403.

Busby assigns on appeal that counsel was ineffective due to his failure to specifically object or move to redact his irrelevant and unfairly prejudicial statement contained in exhibit 1. He argues that although counsel generally objected to the admission of exhibit 1, he failed to argue the balancing test of rule 403 or formally move to redact portions of the exhibit, particularly that portion in which Busby asserts that he does not care about a "restraining order" which violates rule 404. Brief for appellant at 27.

Consistent with our analysis above regarding the admissibility of exhibit 1, we conclude that counsel was not ineffective in failing to argue the balancing test of rule 403. We agree with the district court that the voice message was inextricably intertwined with the charged events. Therefore, regardless of defense counsel's argument, the exhibit was admissible. As a matter of law, counsel cannot be ineffective for failing to raise a meritless objection. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

Because the court determined after listening to the contents of exhibit 1 that the exhibit's probative value was not outweighed by the danger of unfair prejudice, there was no basis upon which to redact portions of the exhibit, which we note, was requested by Busby. As observed by the State, a motion for redaction functions as a motion in limine requesting that certain evidence be withheld from the jury due to its prejudicial nature. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). Given our concurrence with the district's ruling on the admissibility of exhibit

1, counsel was not ineffective in failing to request redaction of the reference to a restraining order because the statement at issue was not unfairly prejudicial. We reject this assigned error.

### (e) R.R.'s Nonresponsive Testimony

R.R. testified on both direct and cross-examination that Busby had made prior threats to her during the course of their relationship and that he suffered from alcohol and drug problems. On appeal, Busby argues that counsel was ineffective in failing to object to her testimony on the basis that it was non-responsive or constituted evidence of prior bad acts in violation of rules 403 and 404. We conclude that counsel was not ineffective for failing to object.

Evidence of a defendant's threats to an assault victim can be admitted under the inextricably intertwined exception to rule 404. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Such evidence may be necessary to present a coherent picture of the crime and be part of the factual setting. *Id*. We find that to be true here. The prior threats Busby levied against R.R. were necessary to present a coherent picture of the events that occurred on October 24 and 25, 2020. The State's theory of the case was that Busby had a control issue and when he could not have his daughter on her birthday at the time he desired, he became angry, threatened R.R., and ultimately sexually assaulted her.

Similar to our analysis above regarding the admissibility of exhibit 1 that contained a threatening voice message by Busby to R.R., evidence that Busby made prior threats to R.R. were necessary to present a coherent picture of the crime and was part of the factual setting. The evidence did not show propensity for the sexual assault, but, rather established that Busby had made threats and acted upon them, and therefore was admissible. See, e.g., *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015) (finding pattern of physical abuse was admissible as inextricably intertwined); *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

Even if the prior threats were not inextricably intertwined, they would be admissible under rule 404(2) that provides an exception to the admissibility of prior bad acts when offered for a purpose other than to prove character. R.R. testified that the text messages she received on the night of October 24, 2020, and the morning of October 25 concerned her and based on Busby's prior threats, she tried to evaluate whether he would really follow through on them. She repeatedly stated that based upon Busby's prior threats, she was uncertain whether he would act upon them. This provides context to R.R.'s further actions of allowing the babysitter to leave and her attempt to go to sleep despite the pending threats. We reject Busby's argument that counsel was ineffective in this regard.

Busby also takes issue with R.R.'s testimony that in her opinion he suffered from alcohol and drug problems and argues counsel should have objected. However, R.R. expressed this opinion to explain her statement to him that "Maybe . . . this will help you get the help that you need" when he realized the police were on their way. Aside from the fact that it was couched as an opinion which the jury was free to discredit, it was also a single reference in over 130 pages of testimony from R.R. Furthermore, Busby, himself, stated in exhibit 2 that "I'm clean and sober," thereby implying a past practice of using drugs and alcohol.

Given R.R.'s passing reference to drugs and alcohol, and Busby's own admission to having used both, we conclude that he cannot prove prejudice resulting from counsel's failure to object to R.R.'s testimony.

### (f) State's Offer of Exhibit 2

As explained above, exhibit 2 contains a copy of a letter sent by Busby to R.R. shortly before trial. Busby's counsel objected to the court receiving it as evidence on the basis of foundation and that its probative value was outweighed by its prejudice. Busby argues on appeal that counsel was ineffective for not specifically arguing rules 403, 404, and 609. He identifies a specific reference in the letter about going "back to prison" as the basis for his claim.

However, as set forth above in our analysis of his assigned error regarding the court's receipt of exhibit 2, the exhibit was admissible. The court overruled Busby's rule 403 objection and we concur with that decision. As to rule 404, Busby's statement does not identify what other crime or wrong he had committed, and counsel was not ineffective for failing to object on this basis. See *State v. Schwaderer,* 296 Neb. 932, 898 N.W.2d 318 (2017) (counsel not ineffective for failing to make meritless objection).

Rule 609 precludes attacking a witness' credibility with evidence that he has been convicted of a crime if that conviction is more than 10 years old or if the crime was punishable by less than 1 years' imprisonment. See rule 609. However, due to the vague reference of being sent "back to prison," we find no prejudice to Busby. Reviewing the record as a whole, there is no reasonable probability that but for counsel's failure to object to this portion of exhibit 2, the result of the proceeding would have been different.

### (g) Cross-Examination of R.R.

Busby assigns that counsel was ineffective in failing to cross-examine R.R. about her communications with him while the case was pending. Our record does not contain any information regarding communications by R.R. to Busby while the case was pending. Therefore, we find the record insufficient to address this claim.

### (h) State's Closing Argument

During closing arguments, the State recounted that R.R. testified that Busby "put his penis in her mouth, forced her head back and forth to stimulate his penis." He further stated that she testified that "He was moving her mouth on his penis." On appeal, Busby argues that because these were misstatements as to "a fact crucial to an essential element," lack of consent, he was prejudiced. Brief for appellant at 30. We disagree.

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

Neb. Rev. Stat. § 28-310 (Reissue 2016). Therefore, as relevant to this case, the State was required to prove that Busby subjected R.R. to cunnilingus or fellatio without her consent. See Neb. Rev. Stat. § 28-318 (Reissue 2016) (defining sexual penetration to include cunnilingus and fellatio). Without consent is defined to mean:

> (a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim

expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor.

§ 28-318(8).

We agree that the statement attributed by the State to R.R. does not appear in her testimony. Rather, she testified that Busby told her she "need[ed] to suck [his] dick" and forced her to the ground on her knees and "put[] his penis in [her] mouth." As to the issue of consent, however, neither scenario depicts consent by R.R. and given the narrative by R.R. of the events that transpired, she clearly did not consent to sexual penetration by Busby that night. Therefore, Busby cannot show he was prejudiced by counsel's failure to object to the State's comments. This argument fails.

### (i) Closing Argument

Finally, Busby argues that his counsel failed to argue "several important points during closing arguments." Brief for appellant at 30. Specifically, he claims counsel should have emphasized the lack of physical evidence to support a sexual assault and that the State failed to prove beyond a reasonable doubt that any penetration occurred or that it was not consensual. But his own argument is paradoxical. He states "trial counsel should have argued that there was a lack of physical evidence to find beyond a reasonable doubt any sexual contact was actual penetration. [R.R.] described the only alleged penetration to be fellatio, to which she testified she consented." Brief for appellant at 31. Fellatio is, by statutory definition, sexual penetration, which is an element the State must prove. See, § 28-310; § 28-318. Therefore, if fellatio occurred, the element of penetration was met and it would be inconsistent to admit that there was fellatio but deny penetration.

As to the issue of consent, contrary to Busby's argument, R.R. did not consent to fellatio. Rather, R.R. described the whole event as nonconsensual. Although she testified that she agreed to his second request to have sex with him, she explained that it was an attempt to "buy [herself] some time and safety" until the police arrived. The definition of without consent includes a situation in which the victim feels compelled to submit due to the use of force or threat of force or coercion. See § 28-318. Regardless, R.R. did not testify that she ever agreed to perform fellatio on him. Furthermore, she testified that Busby also performed cunnilingus without her consent, another form of penetration. Therefore, Busby cannot prove prejudice due to counsel's failure to make the argument he asserts should have been made.

Busby also argues that the State should have argued the absence of physical evidence to prove the lack of penetration. But counsel did argue that there was no DNA evidence, "No saliva, no semen, it just didn't happen." This claim of ineffective assistance of counsel fails.

### VI. CONCLUSION

We find no error in the district court's evidentiary rulings on exhibits 1 and 2, nor any abuse of discretion in the sentences imposed. With the exception of Busby's claim related to the

cross-examination of R.R., we reject his claims of ineffective assistance of counsel and affirm his convictions and sentences.

AFFIRMED.